Adrienne L. RICHMOND, etc., Plaintiffs,

v.

NATIONWIDE CASSEL L.P., et al., Defendants.

No. 93 C 6107.

United States District Court, N.D. Illinois, E.D.

March 4, 1994.

Daniel A. Edelman, Chicago, IL, for plaintiffs.

Bonita L. Stone, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This putative class action has been brought by Adrienne Richmond ("Richmond") against related entities Nationwide Cassel L.P. ("Cassel"), Nationwide Acceptance Corporation ("Nationwide") and N.A.C. Management Corporation ("NAC"), based on the allegedly wrongful conduct of Cassel and Nationwide in forcing Richmond to pay for insurance that they procured because Richmond had allowed her own insurance on her vehicle to lapse.[1] Because Richmond's original four-count Complaint asserted one claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"),[2] while the other

---

[1] NAC was named as a co-defendant solely because it is the general partner of Cassel (a limited partnership), owning 1% of Cassel, and because according to Richmond it is therefore liable for all of Cassel's conduct. Because Richmond fails to assert a viable federal claim against Cassel in any event, this opinion need not address that contention.

[2] All RICO citations will take the form "Section—," referring to the statutory numbering in Title 18 rather than to RICO's internal numbering.

three counts were advanced under Illinois state law (jurisdiction over which hinges upon the "supplemental jurisdiction" provisions of 28 U.S.C. § 1367(a)), this Court's threshold look at the original Complaint[3] triggered its issuance of an October 21, 1993 memorandum opinion and order (the "Opinion") that directed Richmond's counsel to address the problematic issues posed by the RICO allegations.

In principal part the Opinion raised the question whether under Richmond's initial pleading defendants' claimed violation of Section 1962 as to Richmond had been perpetrated by statutory "persons" (Section 1961(3)) distinct from the statutory "enterprise" (Section 1961(4)). Thus the Opinion called counsel's attention to some relevant case law and to a leading RICO treatise, then concluded by directing Richmond's counsel to file both an amended Complaint and an accompanying RICO case statement conforming to the standing order that has been adopted by a number of District Judges (not including this one) in all RICO cases.

In response Richmond's counsel did indeed file an Amended Complaint (for convenience the "Complaint"), again including one RICO count and three state-law counts, coupled with a response to the RICO case standing order. Defendants then filed a motion to dismiss the Complaint, and that motion has been fully briefed and is now ripe for decision. For the reason stated in this memorandum opinion and order, the motion is granted and this action is dismissed as well.

 To begin with, this Court of course grants defendants' motion to strike the Appendices to Richmond's responsive memorandum, which set out a number of items extraneous to the Complaint. Where as here a Fed.R.Civ.P. ("Rule") 12(b)(6) motion is at issue, the Complaint itself is the only grist

for the Court's mill—and for that purpose Richmond's well-pleaded allegations are accepted as true, together with reasonable inferences in Richmond's favor (*Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir.1992)). Whether defendants are right in characterizing opposing counsel's uncalled-for tendering of the contents of the Appendices as "attempts to prejudice this Court" (D.R.Mem. 1 n. 1) is irrelevant, though defense counsel are surely correct in saying that "plaintiff's counsel is a seasoned practitioner" who knows better (*id.*).

That collateral issue aside, for present purposes this Court will pass over several issues that are also raised by defendants' motion: their contentions that the Complaint's allegations are insufficient to meet RICO's "pattern" requirement, that the Complaint's allegations of fraud are not particularized enough to meet the requirement of Rule 9(b) and that those same allegations do not set out the multiple acts of mail fraud necessary to satisfy that same "pattern of racketeering activity" definition (Section 1961(5)). Instead this opinion will again focus upon the related "person" and "enterprise" requirements that were originally drawn to counsel's attention months ago in the Opinion.

As that earlier Opinion at 3 pointed out, the "requirement of a separate 'person' and 'enterprise' in the civil RICO context has been plain ever since our Court of Appeals led the way for other Courts of Appeals in so ruling in *Haroco v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 400–01 (7th Cir. 1984), *aff'd on other grounds*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985)."[4] Richmond's counsel has sought to respond to that requirement by identifying two purported "enterprises":

1. One enterprise comprises the three defendants plus several other corporations,

---

**3.** This Court always undertakes an immediate review of newly-filed complaints; see *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986):

> The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

**4.** In addition, the Opinion at 3 n. 3 noted parenthetically:

As chance would have it, this Court had been the first District Court to address that issue in the context of civil RICO (*Parnes v. Heinold Commodities*, 548 F.Supp. 20, 23–24 (N.D.Ill. 1982))—and *Haroco*, 747 F.2d at 400 expressly found this Court's analysis persuasive in construing Section 1962(c).

limited partnerships and individuals (though counsel qualifies some of those others by using the term "possibly")—all of the others being related affiliates of the three defendants.[5]

2. To describe the other "enterprise," counsel refers to the same persons and entities that make up the first one plus auto dealers "with which [the first 'enterprise'] maintains relationships and from which it purchases retail installment contracts" (Complaint ¶ 44(b)).

Here is what Complaint ¶¶ 14 and 16 say about defendants and their affiliates:

14. *Nationwide Group.* Cassel, Nationwide and NAC are part of a group of corporations, entities and individuals which are, and have been for a number of years, associated in fact on an ongoing basis for the purpose of conducting business in selling and financing automobiles, related intangible products (warranties, service contracts, credit life insurance, credit health and accident insurance), as well as other goods and services. The group will be referred to herein as the "Nationwide Group."

16. All of the companies and entities named in ¶¶ 14–15 are under common control and are operated in concert with one another. The ultimate owner of a controlling interest in all is in a single family of individuals, the Lutz family, members of which are also included in the Nationwide Group. As a practical matter, all of the companies and entities named in ¶¶ 14–15 are operated as if they were 100% owned subsidiaries of a common parent.

Complaint ¶ 17 reflects that Nationwide owns 99% of Cassel, so that it and NAC together have the total ownership of the Cassel limited partnership. Finally, Complaint ¶ 44(b) says nothing at all about the auto dealers except the purely conclusory allegation that

they are part of the second claimed "enterprise." Those are the totality of the Complaint's allegations against which RICO's statutory requirements must be applied.

For that purpose it must be remembered just why *Haroco* and other cases demand that the "person" charged with violating Section 1962(c) must be distinct from the RICO "enterprise." What Section 1962(c) renders illegal is the conduct of the "person" that is associated with the "enterprise" in "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." In that respect the basic problem of Richmond's counsel is that described by Shakespeare when he said "Thy wish was father ... to that thought." [6] Richmond cannot meet the demands of RICO just by naming a string of entities that assertedly make up an "association in fact" (even though under proper circumstances such an association can indeed be an "enterprise" for RICO purposes [7]). Instead it is necessary that the Complaint identify such an "association in fact" that is meaningfully different in the RICO context from the units that go to make it up—and that has not been done here at all.

Last year's opinion in *Reves v. Ernst & Young,* —— U.S. ——, ——, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993) referred obliquely (albeit in a different context) to that need to specify a RICO-meaningful relationship when it said that Section 1962(c) "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs" (emphasis in original). But the leading case that has fleshed out the need for separateness of the "person" from the "enterprise" in the "association in fact" context is *Brittingham v. Mobil Corp.,* 943 F.2d 297, 301, 302 (3d Cir.1991) (footnote omitted):

---

5. This opinion employs "affiliate" in the familiar securities law sense of entities that control or are controlled by or are under common control with each other.

6. *King Henry IV Part II,* act 4, sc. 5, line 91.

7. Section 1961(4) concludes its statement of what an "enterprise includes"—after it lists various types of legal entity—by referring to "any union or group of individuals associated in fact although not a legal entity." Although that language does not literally encompass a group of entities other than *individuals* that are "associated in fact," the cases have not read the provision in such a limited fashion.

We believe a § 1962(c) enterprise must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation. A corporation must always act through its employees and agents, and any corporate act will be accomplished through an "association" of these individuals or entities. Consequently, the *Enright* rule [of the separate "person" and "enterprise"] would be eviscerated if a plaintiff could successfully plead that the enterprise consists of a defendant corporation in association with employees, agents, or affiliated entities acting on its behalf.... Therefore, we must examine the enterprise allegation to determine whether it is no more than an association of individuals or entities acting on behalf of a defendant corporation. Our decision is in accord with numerous courts that have rejected attempts to circumvent the distinctiveness requirement by alleging enterprises that are merely combinations of individuals or entities affiliated with a defendant corporation.

* * * * * *

But when a defendant is itself a collective entity, it is more likely that the alleged enterprise is in reality no different from the association of individuals or entities that constitute the defendant or carry out its actions.

Accord, such cases as *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132, 139–41 (D.C.Cir.1989), *reconfirmed on reh'g*, 913 F.2d 948, 951 (D.C.Cir.1990) (en banc) ("allowing plaintiffs to generate such 'contrived partnerships' consisting of an umbrella organization and its subsidiary parts, would render the nonidentity requirement of section 1962(c) meaningless" (883 F.2d at 141)). Although each of *Brittingham* and *Yellow Bus Lines* dealt with a different combination of alleged players than Richmond puts forth here, the principle that those cases have announced applies with equal force here.

Richmond's counsel urges that *Brittingham* is not the law in this Circuit—that it is somehow at odds with *Haroco*, which confirmed (747 F.2d at 402–03) that a subsidiary corporation could be the "person" to its parent's "enterprise" (that is, that it could "conduct or participate ... in the conduct of [the parent's] affairs through a pattern of racketeering activity" as Section 1962(c) requires). But that unexceptionable proposition is very different from the amorphous manner in which Richmond and her counsel have failed to suggest how the defendants targeted in this case [8] conducted not just their *own* affairs (*Reves*, —— U.S. at ——, 113 S.Ct. at 1173) but also the affairs of the ill-defined "association in fact" (which on Richmond's allegations is, for RICO purposes, just a group of related entities strung together by a label).

Apart from the three named defendants, none of the other affiliate entities referred to in Complaint ¶ 14 is alleged to be hooked up (in terms of the "conduct of their affairs") with the allegedly fraudulent conduct that is said to have defrauded Richmond and the other class members. Although three of those affiliates do engage in aspects of the insurance business, the "force placed insurance" that forms the gravamen of the Complaint was obtained from an unrelated insurance company in California (Complaint ¶ 45; and see Complaint Ex. E, the cover sheet of the policy issued by Balboa Insurance Company, Irvine, California). Thus the situation is no different, in the terms made relevant by Section 1962(c), than if any or all of the three named defendants was or were affiliated with entities engaged in businesses having no relationship to the RICO violations—say a dairy, a pizza parlor and a funeral home.[9]

In terms that are relevant to the current analysis, then, it is just as though Richmond had named Cassel, Nationwide and NAC as the target "persons" and only an "association in fact" made up of those three alone as the

---

8. Quite apart from the problem now being discussed in the text, there is a serious question whether NAC can fairly be tagged as a RICO "person" simply because of its general partnership status in Cassel (see n. 1). But as n. 1 states, it is unnecessary to resolve that question.

9. That is, the other claimed members of the "association in fact" are not among those whose affairs are conducted through the alleged pattern of racketeering activity.

purported "enterprise." And that being true, Richmond clearly flunks the *Haroco* separateness test (to say nothing of running afoul of the *Brittingham–Yellow Bus Lines* type of exposition).

That analysis really dispatches Richmond's second purported "association in fact" as well. In that regard Richmond simply attempts to tack onto the other claimed "enterprise" the group of "car dealers with which [the first collective group] maintains relationships and from which it purchases retail installment contracts" (Complaint ¶ 44(b)). Nothing in the Complaint or in Richmond's case statement response to the Opinion casts any meaningful added light on the subject in RICO terms. That claimed "enterprise," assembled as it is from the second "association in fact," is equally empty.

■ In summary, Richmond has engaged in a Procrustean effort to reshape her claim—one that may perhaps be entirely viable under state law, although this Court has no occasion to decide whether that is so— into a claim that comes under the RICO rubric. That effort has failed, and Count I is dismissed. And because Richmond has already had one opportunity to refashion her claim for that purpose, no opportunity to replead the RICO claim is in order. Instead Counts II through IV are also dismissed—in their case under the teaching of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). All counts having thus been dispatched, this action itself is dismissed.[10]

---

**10.** This Court is of course well aware of the provisions of Rule 23(c)(1), under which the question of class certification is to be addressed "[a]s soon as practicable after the commencement of an action brought as a class action...." It normally follows that procedure, eschewing consideration of the merits. In this instance, however, the only federal claim appeared so problematic from the outset that it seemed likely (as has proved to be the case) that the state claims would have to be resolved by another court of competent jurisdiction. That being so, this Court believes that considerations of federalism and comity (as well as jurisprudential economy) have justified an early resolution of the substantive RICO claim rather than the class certification issues.