52 F.3d 640
 RICO Bus.Disp.Guide 8783
 Adrienne L. RICHMOND, on behalf of herself and all others
similarly situated, Plaintiff-Appellant,
v.
NATIONWIDE CASSEL L.P., Nationwide Acceptance Corporation,
and N.A.C. Management Corporation, Defendants-Appellees.
 No. 94-1540.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Oct. 12, 1994.
Decided April 11, 1995.
 
 Daniel A. Edelman (submitted), Cathleen M. Combs, Tara G. Redmond, J. Eric Vander Arend, Michelle A. Weinberg, Edelman & Combs, Chicago, IL, for plaintiff-appellant.
 Bonita L. Stone, Stewart T. Kusper, Katten, Muchin & Zavis, Chicago, IL, for defendants-appellees.
 Before ESCHBACH, RIPPLE and ROVNER, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 Adrienne Richmond brought an amended complaint against defendants Nationwide Cassel L.P. ("Cassel"), Nationwide Acceptance Corporation ("Nationwide Acceptance"), and N.A.C. Management Corporation ("NAC"). She alleged that they forced her to pay for excessive automobile insurance and therefore violated 18 U.S.C. Sec. 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). She now appeals the district court's dismissal of her claim. For the reasons presented in this opinion, we affirm the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 Ms. Richmond purchased a 1984 Nissan Maxima from Let's Make A Deal Auto Sales. She traded in her old car, made a down payment of $500 in cash, and financed the remaining amount owed through a retail installment sales contract that set up twenty-one monthly payments of $187.28. The installment contract required Ms. Richmond to keep the car fully insured for the term of the contract. It authorized Ms. Richmond to furnish her own insurance if she so chose, but provided that the contract holder would purchase insurance for her at her expense if she did not provide it.[1] Ms. Richmond's installment contract was subsequently assigned to defendant Cassel by Let's Make A Deal.
 
 
 4
 Ms. Richmond did not purchase her own insurance for the financed car. On March 11, 1991, Cassel and Nationwide Acceptance sent a notice to her stating that the required insurance had been obtained on her behalf from Balboa Insurance Company, but that, "should you or your agent forward evidence that you currently have insurance which protects our collateral, we will cancel the attached insurance, effective the date of your policy." Ms. Richmond paid for the insurance procured by Cassel and Nationwide Acceptance. The cost of the insurance was added to her monthly payments for the remainder of the installment contract. Ms. Richmond then filed a class action against the defendants. The amended complaint alleged that the defendants fraudulently charged her for this "forced placed insurance."B. The Amended Complaint[2]
 
 
 5
 Ms. Richmond's amended complaint is comprised of four counts. Count I alleges a RICO violation under 18 U.S.C. Sec. 1962(c).[3] The remaining counts are state law claims: violation of the Illinois Consumer Fraud Act (Count II); breach of contract (Count III); and violation of the Illinois Sales Finance Agency Act (Count IV). Because the dismissal of the amended complaint was based on failure to state a RICO claim, we focus on the allegations of Count I.
 
 
 6
 The factual basis for this complaint is summarized in the introductory allegation.[4] It alleges that Cassel and Nationwide Acceptance, without authorization under the contract, fraudulently required Ms. Richmond to purchase "forced placed insurance," insurance of the defendant's choosing that provided more coverage than she needed. The excessive coverage in the "forced placed insurance" included premiums based on the full outstanding balance, rather than on the remaining principal balance, and coverage against acts of default by the obligor. As a result of the conduct of Cassel and Nationwide Acceptance, Ms. Richmond claims that she suffered a loss of money, and that other members of her class also suffered creation of fictitious debt, repossession of vehicles, and injury to their credit. The amended complaint further alleges that, because they used the mails to demand payment for these unauthorized insurance premiums, the defendants violated the federal mail fraud and RICO statutes.
 
 
 7
 In paragraphs 6-13 this complaint describes each defendant. Cassel, a limited partnership, is a sales finance agency that purchases car retail installment contracts and enforces the contracts against consumers. NAC is the general partner and 1% owner of Cassel. Nationwide Acceptance, the other partner and 99% owner of Cassel, is also a sales finance agency. Cassel and Nationwide Acceptance, which present themselves to the public as indistinguishable entities, have ongoing relationships with certain car dealers from which they purchase motor vehicle retail installment contracts. The amended complaint also alleges that Cassel, Nationwide Acceptance and NAC are part of "Nationwide Group," a group of corporations and entities "associated in fact on an ongoing basis for the purpose of conducting business in selling and financing automobiles," warranties and insurance, and are under common control of the Lutz family. The group includes the Wix Auto Company, Total Financial American Life Insurance Company, Illinois Founders Insurance Company and Hercules Insurance Agency, L.P., and may also include several other companies.
 
 
 8
 Under Count I, the amended complaint alleges that there are two "enterprises"[5] in this case: the Nationwide Group (as described in pp 14-17) and the "Nationwide Group and the car dealers with which it maintains relationships and from which it purchases retail installment contracts." Amended compl. at p 44. Although this complaint does not identify which entities are "persons" within RICO,[6] it is the actions of Cassel and Nationwide Acceptance that form the basis of Ms. Richmond's RICO allegations under Sec. 1962(c):
 
 
 9
 Cassel and Nationwide [Acceptance] conducted or participated in the affairs of the enterprises through a pattern of mail fraud.... In particular, Cassel's and Nationwide [Acceptance]'s fraudulent conduct continued through at least 1990-1993, a period of three years. The conduct was directed to a large number of related victims, all of whom are consumers who purchased vehicles on credit. The acts of fraud were all related in that they involved charges for the same improper and unauthorized insurance, and the same misleading and fraudulent statements to the victims regarding the nature of the insurance and the victims' purported obligation to pay were made to all.
 
 
 10
 Amended complaint at p 47. Because the defendants used the United States mails in furtherance of its pattern, Ms. Richmond seeks to recover treble damages, fees, costs, and other relief under RICO.
 
 C. District Court Opinion
 
 11
 The district court dismissed the amended complaint. The ground for dismissal was the complaint's failure to satisfy the RICO requirement of Sec. 1962(c): The "persons" allegedly perpetrating the RICO violation were not separate from the two "enterprises" alleged in the complaint.[7] 847 F.Supp. 88 (N.D.Ill.1994).
 
 
 12
 The district court came to this conclusion by applying the "separateness test" established by Haroco v. American National Bank & Trust Company, 747 F.2d 384, 400-01 (7th Cir.1984), aff'd on other grounds, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), to the amended complaint at issue. It noted that the descriptions of the two enterprises were meager, and that the auto dealers of the second enterprise were mentioned only in the most conclusory fashion. 847 F.Supp. at 91. Searching the complaint for a "person" that was distinct from the RICO "enterprise," the court found only a listing of entities "strung together" by the label "enterprise," and determined that such a listing was not sufficient under RICO.
 
 
 13
 What section 1962(c) renders illegal is the conduct of the "person" that is associated with the "enterprise" in "conducting or participating, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." ... Richmond cannot meet the demands of RICO just by naming a string of entities that assertedly make up an "association of fact" (even though under proper circumstances such an association can indeed be an "enterprise" for RICO purposes). Instead, it is necessary that the complaint identify such an "association in fact" that is meaningfully different in the RICO context from the units that go to make it up--and that has not been done here at all.
 
 
 14
 Id. The district court found that the amended complaint failed to suggest how the defendants conducted the affairs of the enterprise, over and above their own affairs. It noted that only the three named defendants (and none of the other affiliate entities) have any tie to the alleged fraudulent conduct that was said to have harmed Ms. Richmond, and also that the insurance company that provided the insurance to Ms. Richmond under the installment contract was not even a party to this action. The district court concluded that the three defendants were both the target "persons" and the "association in fact" that made up the purported "enterprise," and thus were in no way separate. Ms. Richmond's second "association in fact," the combination of the original "enterprise" plus car dealers with which that group maintains relationships, was equally infirm. 847 F.Supp. at 93. Therefore, the court concluded that the allegation did not state a claim under the RICO rubric and dismissed the amended complaint.
 
 II
 DISCUSSION
 
 15
 Ms. Richmond submits that the district court erred in dismissing her amended complaint. We review the district court's decision de novo. Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 775 (7th Cir.1994). Thus we, like the district court, take all of the well-pleaded factual allegations contained in the amended complaint as true, and construe them in a light most favorable to the plaintiff. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249, 109 S.Ct. 2893, 2905, 106 L.Ed.2d 195 (1989). Dismissal of a complaint for failure to state a claim is granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).
 
 A.
 
 16
 To state a claim under Sec. 1962(c), a RICO plaintiff must show the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 3284-85, 87 L.Ed.2d 346 (1985) (footnote omitted). A RICO enterprise is "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." Jennings v. Emry, 910 F.2d 1434, 1440 (7th Cir.1990) (citations omitted). The two enterprises identified by the amended complaint before us are the Nationwide Group,[8] a group associated in fact, and the Nationwide Group plus car dealerships with which it does business.[9] An "association in fact enterprise" is defined by the statute as a "union or group of individuals associated in fact although not a legal entity." 18 U.S.C. Sec. 1961(4). The Supreme Court has described it as "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). The Court explained that an enterprise is shown "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Id.; see also Hartz v. Friedman, 919 F.2d 469, 471 (7th Cir.1990) (questioning whether an association in fact of attorneys had the "structure, purpose, and continuity needed in order to qualify as an 'enterprise' under RICO").
 
 
 17
 The district court determined that the amended complaint's identification of its two "enterprises" was far too cursory and conclusory:
 
 
 18
 Richmond cannot meet the demands of RICO just by naming a string of entities that assertedly make up an 'association in fact' (even though under proper circumstances such an association can indeed be an 'enterprise' for RICO purposes).
 
 
 19
 847 F.Supp. at 91. Ms. Richmond challenges the district court's conclusion. She submits that the enterprises were properly alleged to be a number of entities associated together for a common purpose of engaging in the sale of used cars, related insurance and warranty products, and the financing of the sales. Defendants, on the other hand, encourage our adoption of the district court's position that the enterprises claimed in the amended complaint are "empty," 847 F.Supp. at 93, by demonstrating that the complaint failed to allege proper or sufficiently particular enterprises.
 
 
 20
 A RICO complaint must identify the enterprise. Jennings, 910 F.2d at 1439-40; Otto v. Variable Annuity Life Ins. Co., 814 F.2d 1127, 1136 (7th Cir.1986), cert. denied, 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988). An enterprise "must be more than a group of people who get together to commit a 'pattern of racketeering activity,' " United States v. Neapolitan, 791 F.2d 489, 499-500 (7th Cir.), cert. denied, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986), and more than a group of associated businesses that "are operated in concert" under the control of one family. "The hallmark of an enterprise is a 'structure.' " United States v. Korando, 29 F.3d 1114, 1117 (7th Cir.) (citing Neapolitan, 791 F.2d at 500), cert. denied, --- U.S. ----, 115 S.Ct. 496, 130 L.Ed.2d 406 (1994). There must be "a structure and goals separate from the predicate acts themselves." Id. (citing United States v. Masters, 924 F.2d 1362, 1367 (7th Cir.), cert. denied, 500 U.S. 919, 111 S.Ct. 2019, 114 L.Ed.2d 105 (1991)). An enterprise can be formal or informal; there need not be much structure, but the enterprise must have some continuity and some differentiation of the roles within it. Burdette v. Miller, 957 F.2d 1375, 1379 (7th Cir.1992). There must also be "a common purpose of engaging in a course of conduct," Turkette, 452 U.S. at 583, 101 S.Ct. at 2528-29, although the motive for the enterprise need not be an economic one. National Org. for Women, Inc. v. Scheidler, --- U.S. ----, ----, 114 S.Ct. 798, 805, 127 L.Ed.2d 99 (1994).
 
 
 21
 This complaint lists the three defendants as part of "Nationwide Group," a group that "includes at least" four other entities, listed in p 14, and that may include other businesses, three of which are suggested and listed in p 15. The second enterprise, Nationwide Group plus unnamed car dealers, is even less clearly identified; in fact, it does not even mention Let's Make a Deal Auto Sales, the dealership from which Ms. Richmond purchased her used car. Such a nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of the RICO offense. In Vicom, we held that a lengthy, prolix complaint was worthy of dismissal because it was not "simple, concise, and direct," as required by Rule 8(a)(2) of the Federal Rules of Civil Procedure. 20 F.3d at 775-76. The infirmity of this amended complaint, although different from the one in Vicom, also violates Rule 8. This amended complaint is so scanty and its allegations so vague that it too fails to satisfy the notice requirement of Rule 8:
 
 
 22
 The primary purpose of these [Rule 8] provisions is rooted in fair notice: Under Rule 8, a complaint " 'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.' "
 
 
 23
 Id. at 775 (citations omitted).
 
 
 24
 To the extent the amended complaint offers some specific allegations concerning structure, continuity and common course of conduct, it does so not with respect to the two named enterprises, but with respect to the two named defendants, Nationwide Acceptance and Cassel.[10] Nationwide Group, the alleged enterprise, is described only as companies that provide a variety of services to the used car industry and that are controlled by the Lutz family. Not one of the non-defendant entities, supposedly constituent parts of the "enterprise," is described as playing a role in the forced placed insurance that allegedly was foisted on the used car purchaser-victim. This complaint clearly alleges only that the defendants perpetrating the fraud on Ms. Richmond were conducting their own (and each other's) affairs. Ms. Richmond's attempts, in her appellate briefs, to elaborate on the relationship between the "enterprise" Nationwide Group and the "persons" Nationwide Acceptance and Cassel are of no avail; the pleading itself must state the essential elements of the RICO action or it is worthy of dismissal. Therefore, we agree with the district court that plaintiff's naming of a string of entities does not allege adequately an enterprise.
 
 B.
 
 25
 Even if a complaint alleging a Sec. 1962(c) claim adequately identifies an enterprise, it must also establish that the "person" associated with the enterprise conducted or participated, "directly or indirectly, in the conduct of such enterprises's affairs through a pattern of racketeering activity." To be liable under Sec. 1962(c), that person "must participate in the operation or management of the enterprise itself," Reves v. Ernst & Young, --- U.S. ----, ----, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993) (which means having "some part in directing those affairs," id. at ----, 113 S.Ct. at 1170), and must be separate and distinct from the enterprise. Haroco, Inc. v. American Nat'l Bank & Trust Co., 747 F.2d 384, 401-02 (7th Cir.1984), aff'd on other grounds, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).[11] Indeed, "liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." Reves, --- U.S. at ----, 113 S.Ct. at 1173.
 
 
 26
 Ms. Richmond contends on appeal that the three defendants are the "persons" under RICO, that their conduct included the forced placement of unauthorized and excessive automobile insurance, and that the enterprises are the group of entities associated in fact to sell used cars and the accompanying car warranties and insurance. She contends that, as long as the "enterprise" constitutes a structured group of persons or firms that engages in organized economic activities, the conduct of one aspect of that economic activity by one member of the group through fraud is cognizable under Sec. 1962(c).
 
 
 27
 This court has dealt several times with the question of whether the person and the enterprise are distinct entities. Haroco established that an individual corporation could not be held liable as a "person" that conducted its own affairs through a pattern of racketeering activity, but a subsidiary that had conducted the affairs of its parent corporation could be found liable under Sec. 1962(c). When the enterprise is a corporation or distinct business entity and the person is someone managing it, we have found distinct and separate entities and accordingly have held the defendant liable. See United States v. Robinson, 8 F.3d 398, 407 (7th Cir.1993) (determining that the president and controlling shareholder of the corporation-enterprise was a separate and distinct entity from that enterprise); Ashland Oil, Inc. v. Arnett, 875 F.2d 1271, 1280 (7th Cir.1989) (determining that the defendants, owners of Arnett Oil, were sufficiently distinct from their incorporated business to be treated as separate entities); McCullough v. Suter, 757 F.2d 142, 144 (7th Cir.1985) (holding that an unincorporated sole proprietorship is a distinct enterprise from its owner when it employs several individuals). But when an entity is an individual who conducts his own affairs through a pattern of racketeering, there is no enterprise and hence no valid Sec. 1962(c) RICO claim. Cf. United States v. DiCaro, 772 F.2d 1314, 1319 (7th Cir.1985) (reversing RICO conviction of a defendant charged with being the "enterprise"), cert. denied, 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986). "The only important thing is that [the enterprise] be either formally (as when there is incorporation) or practically (as when there are other people besides the proprietor working in the organization) separable from the individual." McCullough, 757 F.2d at 144. In the case before us, the district court, following Haroco, required "that the Complaint identify ... an 'association in fact' that is meaningfully different in the RICO context from the units that go to make it up," and determined that "that has not been done here at all." Richmond, 847 F.Supp. at 91.
 
 
 28
 The Third Circuit considered a similar relationship between the person and the enterprise in Brittingham v. Mobil Corp., 943 F.2d 297 (3d Cir.1991). The RICO persons in that case were Mobil Corporation and its subsidiary's unincorporated division, Mobil Chemical Company, and the enterprise was the association in fact of Mobil, Mobil Chemical and their advertising and marketing agencies. The Third Circuit concluded that the person-enterprise distinction had not been established, and rejected the attempt "to circumvent the distinctiveness requirement by alleging enterprises that are merely combinations of individuals or entities affiliated with a defendant corporation." Id. at 301-02. The court noted that, although it may not be difficult to distinguish between individual defendants and the association in fact enterprise,
 
 
 29
 when a defendant is itself a collective entity, it is more likely that the alleged enterprise is in reality no different from the association of individuals or entities that constitute the defendant or carry out its actions.
 
 
 30
 Id. at 302. In Brittingham, the Third Circuit required that the enterprise be "more than an association of individuals or entities conducting the normal affairs of a defendant corporation." The Second Circuit also dismissed a RICO claim that failed to establish that the enterprise, an association in fact made up of the bank and two loan officers, was distinct from the bank itself. Riverwoods Chappaqua v. Marine Midland Bank, 30 F.3d 339, 343 (2d Cir.1994) (finding that a person's actions, coercing appellants to "restructure" certain loan agreements with bank, was same as activities of "association in fact enterprise" bank and its employees carrying out the bank's business).[12]
 
 
 31
 In this case, Ms. Richmond's claim begins and ends with the fraud allegedly committed by Nationwide Acceptance and Cassel. There is no showing that other members of the alleged association in fact participated in the fraud, or that the persons, Nationwide Acceptance and Cassel, conducted the affairs of either of the alleged enterprises (rather than their own affairs) through a pattern of racketeering activity, as required by Reves, --- U.S. at ----, 113 S.Ct. at 1173. "[L]iability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." Id. The amended complaint's failure to present an enterprise separate and distinct from the persons sought to be held liable is a proper basis for its dismissal.
 
 AFFIRMED
 
 
 [1]
 The pertinent portion of the installment contract states:
 Buyer agrees to keep said motor vehicle fully insured against loss by fire, theft and collision for the entire term of this contract in companies acceptable to holder. Holder is authorized to purchase all insurance included in this contract. Insurance coverages, other than required insurance, have been voluntarily contracted for by Buyer. Buyer may elect to purchase any required insurance from an insurance company, agent or broker of [her] own choice. If Buyer so elects, [s]he shall furnish Seller with a policy or binder issued by a company acceptable to Seller on or before taking possession of the motor vehicle.... In the event of the failure of Buyer to insure said motor vehicle or to deliver a fully paid policy to holder at the times and in the manner herein provided, or in the event of cancellation or expiration of any policy during the term of this contract without replacement by Buyer within 10 days, such failure shall constitute an event of default hereunder. Holder shall have the option, but shall not be required, to procure such insurance for Buyer for the term of one year or for the remaining term of this contract, and to advance the premium therefore. In the event holder elects to procure insurance, Buyer promises to pay the premiums advanced by holder together with a finance charge thereon (computed at the same annual percentage rate per year as the finance charge in this contract) as additional indebtedness due hereunder. Buyer agrees to pay such additional indebtedness in equal installments (at the option of the holder either for a term of one year or for the remaining term of the contract) concurrently with the installments of the Total of Payments then remaining hereunder.
 R.10 at Exs. C and D.
 
 
 [2]
 The district court had sua sponte dismissed the original complaint filed by Ms. Richmond on the ground that the RICO count had not satisfied the Sec. 1962(c) requirement that the violation alleged must be perpetrated by a statutory "person" distinct from the statutory "enterprise." The court permitted Ms. Richmond to file an amended complaint and RICO Case Statement. It is this amended complaint, R.10, that is presently before the court
 
 
 [3]
 18 U.S.C. Sec. 1962(c) provides:
 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 
 
 [4]
 The introduction to the amended complaint begins with this allegation:
 
 
 [1]
 Plaintiff alleges that she was defrauded by Nationwide Cassel L.P. ("Cassel"), Nationwide Acceptance Corporation ("Nationwide") and N.A.C. Management Corporation ("NAC"). Cassel and Nationwide attempted to force her to pay for insurance which they procured because plaintiff had allowed her own insurance on her vehicle to lapse ("forced placed insurance"). However, the insurance defendants obtained included coverage for defaults on the loan, and/or was issued in amounts exceeding the outstanding balance on the contract. Defendants were not authorized to charge plaintiff for such insurance under her contract. R.10 at 1
 
 
 [5]
 18 U.S.C. Sec. 1961(4) defines "enterprise" as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity."
 
 
 [6]
 18 U.S.C. Sec. 1961(3) defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property."
 
 
 [7]
 The court also granted defendants' motion to strike the appendices, because the court, under a Rule 12(b)(6) motion to dismiss, would review only the complaint. No challenge was raised to this ruling on appeal. In addition, the court stated that it would not discuss the allegation that the complaint was insufficient to meet the "pattern" requirement, that the allegations of fraud were not particularized enough, and that the allegations of fraud did not set out multiple acts of mail fraud
 
 
 [8]
 The complaint defines Nationwide Group at R.10, p 14:
 Cassel, Nationwide and NAC are part of a group of corporations, entities and individuals which are, and have been for a number of years, associated in fact on an ongoing basis for the purpose of conducting business in selling and financing automobiles, related intangible products (warranties, service contracts, credit life insurance, credit health and accident insurance), as well as other goods and services....
 
 
 [9]
 The complaint defines the second enterprise in p 44 as "Nationwide Group and the car dealers with which it maintains relationships and from which it purchases retail installment contracts." R.10 at p 44
 
 
 [10]
 Both Nationwide Acceptance and Cassel have been sales finance agencies for at least a decade, and both purchase motor vehicle retail installment contracts from car dealers and enforce the contracts against consumers. Nationwide Acceptance is the effective controlling party of Cassel, and enforces Cassel contracts as well. The two agencies act in concert, and together they are one of the largest financiers of consumer automobile paper in the Chicago metropolitan area. An unidentified "management of the enterprises" gave defendants Cassel and Nationwide Acceptance "the task of acquiring and servicing a substantial portfolio of such [consumer credit] obligations." Amended compl., R.10 at p 46. The complaint alleged that Cassel and Nationwide Acceptance conducted the affairs of the enterprises through a pattern of mail fraud by fraudulently charging for "improper and unauthorized insurance." Id. at p 47
 
 
 [11]
 According to the Sixth Circuit, the "non-identity" or "distinctiveness" requirement has been described as the "relatively uncontroversial premise that, for purposes of section 1962(c), a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise." Davis v. Mutual Life Ins. Co., 6 F.3d 367, 377 (6th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1298, 127 L.Ed.2d 650 (1994); accord Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir.1994); Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 583 (5th Cir.1992); Glessner v. Kenny, 952 F.2d 702, 710 (3d Cir.1991); Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44-45 (1st Cir.1991); Atlas Pile Driving Co. v. DiCon Fin. Co., 886 F.2d 986, 995 (8th Cir.1989); Wilcox v. First Interstate Bank, 815 F.2d 522, 529 (9th Cir.1987); United States v. Computer Sciences Corp., 689 F.2d 1181, 1190 (4th Cir.1982), cert. denied, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). But see Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1398, 1404-06 (11th Cir.1994) (rejecting non-identity rule), cert. denied, --- U.S. ----, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995)
 
 
 [12]
 See also Parker & Parsley, 972 F.2d at 583 (the association in fact, made up of corporate defendant's employees, cannot be both the enterprise and RICO perpetrator); Glessner, 952 F.2d at 710-11 (affirming dismissal of Sec. 1962(c) claim for failure to plead persons distinct from enterprise); Odishelidze v. Aetna Life & Casualty Co., 853 F.2d 21, 23-24 (1st Cir.1988) (per curiam) (affirming dismissal of RICO claim because it did not identify a defendant separate from the enterprise insurance company and its subsidiaries and employees); Atkinson v. Anadarko Bank & Trust Co., 808 F.2d 438, 440-41 (5th Cir.) (per curiam), cert. denied, 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987) (concluding that there was no RICO violation because plaintiffs failed to establish existence of any entity separate and apart from the defendant bank)