NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2105
_____

RICHARD H. MCCULLOUGH;
HOLLY A. MCCULLOUGH,

Appellants

v.

ZIMMER, INC.; ZIMMER HOLDINGS, INC.;
STRYKER ORTHOPEDICS, INC; STRYKER, INC;
ZIMMER-RANDALL ASSOCIATES, INC.


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 08-01123)
District Judge: Honorable Arthur J. Schwab
_____

Submitted Under Third Circuit LAR 34.1(a)
May 19, 2010

Before: FUENTES, HARDIMAN and NYGAARD, *Circuit Judges*.

(Filed:June 1, 2010)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Richard and Holly McCullough, husband and wife, sued five of the nation's largest manufacturers of orthopedic devices, alleging violations of federal and state law. The McCulloughs appeal from an order of the District Court dismissing their amended complaint for failure to state a claim. We will affirm, largely for the reasons articulated by the District Court in its thorough opinion.

I.

Because we write for the parties, we recount only the essential facts.

A.

Defendants Zimmer, Inc., Depuy Orthopaedics, Inc., Biomet, Inc., Smith & Nephew, Inc., and Stryker Orthopedics, Inc. are competing manufacturers of surgical orthopedic devices that together account for approximately 95% of the United States market in such products. In 2007, a Department of Justice investigation revealed that from at least 2002 until 2006, each defendant individually paid kickbacks and bribes to orthopedic surgeons to induce them to use its products. Although the companies engaged in similar schemes, the investigation did not suggest that they had colluded or otherwise coordinated their illicit conduct. Defendants avoided criminal liability by agreeing to implement new corporate compliance procedures and to submit to federal monitoring. Four of the companies also agreed to pay a total of $311 million in fines.

The McCulloughs averred that they competed directly with Defendants beginning in 1988. The source of this competition, according to the McCulloughs, was the fact that they possessed exclusive contracts with Defendants' competitors, including Sulzer-Medica, Inc. (Sulzer), to demonstrate, distribute, and service surgical orthopedic devices in western Pennsylvania, eastern Ohio, and West Virginia. The McCulloughs alleged that the bribes and kickbacks paid by Defendants harmed their business and eventually excluded them from the surgical orthopedic device market in their sales territory in violation of the federal antitrust laws. Specifically, they alleged that Defendants violated § 1 of the Sherman Act, 15 U.S.C. § 1, and § 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), which gave them a private right of action under § 4 of the Clayton Act, 15 U.S.C. § 15(a). The McCulloughs also alleged that Defendants violated the civil aspect of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962, 1964. Finally, their complaint included several Pennsylvania state law claims.

B.

After its initial review of the complaint, the District Court ordered the McCulloughs to amplify their RICO allegations by filing a detailed "RICO case statement." Defendants subsequently filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. After hearing oral argument, the District Court granted Defendants' motion but allowed the McCulloughs leave to amend their complaint. In doing so, the District Court candidly explained that the McCulloughs

3

had not adequately alleged standing under either the Clayton Act or RICO. The District Court also explained that the complaint was deficient in regard to the existence of a RICO enterprise.[1]

Following the District Court's initial decision, the McCulloughs filed an amended complaint. Defendants filed a second motion to dismiss under Rule 12(b)(6), which the District Court again granted. The District Court held the McCulloughs lacked standing because they had not suffered a cognizable antitrust injury attributable to Defendants' alleged conduct. The District Court also held that the relevant factors identified by the Supreme Court in *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 537-545 (1983), militated against finding antitrust standing on these facts.[2]

---

[1] After the District Court dismissed the McCulloughs' initial complaint, defendants Depuy Orthopaedics, Inc., Biomet, Inc., and Smith & Nephew, Inc. settled with the McCulloughs. Only Zimmer, Inc., Stryker Orthopedics, Inc. and their associated entities remain as defendants.

[2] We have described these factors as:

(1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

*In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165-66 (3d Cir. 1993)

The District Court also identified numerous problems with the substance of the McCulloughs' antitrust allegations. Explaining that the "essence of a Section 1 claim [under the Sherman Act] is the existence of an agreement[,]" the District Court observed that the McCulloughs "have not alleged that Defendants acted in concert." The District Court further found that the McCulloughs not only failed to plead any "anticompetitive effects on the relevant market[,]" as the Sherman Act requires, but also neglected to define the relevant market properly in the first instance. The District Court also dismissed the McCulloughs' Robinson-Patman Act claim, finding that although the couple argued they had properly pled a commercial bribery claim under Section 2(c), their amended complaint alleged only illegal price discrimination under Section 2(a).

The McCulloughs' RICO allegations were deficient as well. The District Court held the McCulloughs failed to allege the existence of a RICO enterprise with sufficient specificity because neither their amended complaint nor their RICO case statement explained how Defendants "are organized into a cohesive unit involved in group action." Furthermore, the McCulloughs did not aver that the supposed enterprise existed independent of the alleged racketeering activity.

After dismissing all federal claims, the District Court declined supplemental jurisdiction over the couple's remaining state law claims. This appeal followed.[3]

(citing *Associated Gen.*, 459 U.S. at 545).

[3] The District Court had jurisdiction over the antitrust and RICO claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C.

5

II.

The McCulloughs claim the District Court erred in various respects when it dismissed their antitrust and RICO claims. We review *de novo* the District Court's dismissal of plaintiffs' amended complaint for failure to state a claim pursuant to Rule 12(b)(6). *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

A.

The doctrine of antitrust standing ensures that a "plaintiff is a proper party to bring a private antitrust action." *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 429 (3d Cir. 1993) (quoting *Associated Gen.*, 459 U.S. at 535 n.31) (internal quotation marks omitted). Because it is a threshold requirement to bring suit under the Clayton Act, s*ee City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 264-65 (3d Cir. 1998), we turn first to the McCulloughs' contention that the District Court erred when it held they lacked standing to pursue their antitrust claims.

As we did in *City of Pittsburgh*, *see* 147 F.3d at 265, the District Court first considered whether the McCulloughs had alleged an "antitrust injury" that was causally connected to Defendants' alleged anticompetitive conduct. In doing so, the District Court

---

§ 1367. We have appellate jurisdiction under 28 U.S.C. § 1291. The McCulloughs argue that the District Court erred by dismissing their state law claims because it also had diversity jurisdiction. They are mistaken. Diversity jurisdiction "under 28 U.S.C. § 1332 . . . requires complete diversity of the parties; that is, no plaintiff can be a citizen of the same state as any of the defendants." *Grand Union Supermarkets v. H.E. Lockhart Mgmt.*, 316 F.3d 408, 410 (3d Cir. 2003). The amended complaint, however, alleges that the McCulloughs and Zimmer-Randall Associates, Inc. are both Pennsylvania residents.

recognized that typically, a "plaintiff who is neither a competitor nor a consumer in the relevant market does not suffer antitrust injury" and therefore lacks standing to bring suit under the antitrust laws. *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 415 (3d Cir. 1997) (quoting *Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372, 1376 (9th Cir. 1996)).

The McCulloughs argue that because they sometimes purchased products from competitors of Defendants for demonstration and resale purposes, they were both competitors and consumers in the relevant market. We agree with the District Court, however, that the balance of their allegations established the couple only as commission-based sales representatives who did business with competitors and consumers in the market for surgical orthopedic devices, not as competitors or consumers themselves. As mere intermediaries in the supply chain, the McCulloughs suffered no cognizable antitrust injury as a result of Defendants' alleged anticompetitive conduct. *See Barton & Pittinos, Inc. v. Smithkline Beecham Corp.*, 118 F.3d 178, 184 (3d Cir. 1997); *Gregory Mktg. Corp. v. Wakefern Food Corp.*, 787 F.2d 92, 95-97 (3d Cir. 1986).[4]

---

[4] The McCulloughs claim standing based merely upon the alleged link between their lost profits, sales, and market share and Defendants' illegal conduct. They also contend Defendants' antitrust violations were intended to drive businesses like theirs from the market. We have emphasized that "neither causation in this but-for sense nor an allegation of improper motive is sufficient to 'enable any complaint to withstand a motion to dismiss.'" *Gregory Mktg.*, 787 F.2d at 95 (quoting *Associated Gen.*, 459 U.S. at 537).

7

The McCulloughs also cite several cases holding that plaintiffs who were neither competitors nor consumers in the relevant market nonetheless had antitrust standing because their injuries were "inextricably intertwined" with alleged antitrust violations. *See, e.g.*, *Carpet Group Int'l v. Oriental Rug Imp. Ass'n*, 227 F.3d 62, 77 (3d Cir. 2000). In those cases, however, the harm suffered by the plaintiff was typically an "integral" or otherwise "necessary step in effecting the ends of the alleged" anticompetitive conduct. *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 479 (1982). Thus, in *Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris, Inc.*, we rejected a claim by several union healthcare funds that they had standing to bring antitrust claims against tobacco companies for withholding safer products from the market, which included workers covered by the funds. 171 F.3d 912, 923 (3d Cir. 1999). Though the funds were tangentially harmed by the scheme because the workers' healthcare costs were higher over time, their injuries were not inextricably intertwined with the antitrust violations because "the tobacco companies . . . could have achieved their alleged aims without the existence of the Funds or the relationship between the Funds and smokers." *Id*.

So too here, where the injury suffered by the McCulloughs was not an integral aspect of Defendants' alleged scheme. Rather, as the District Court recognized, any harm to the couple's business was a byproduct of the illegal kickbacks and bribes paid by Defendants to numerous doctors and hospitals. Accordingly, we agree with the District

8

Court that the McCulloughs' injury was not so inextricably intertwined with Defendants' anticompetitive conduct that they had standing to bring an antitrust claim.

Finally, the McCulloughs contend that they had antitrust standing because two of the five *Associated General* factors supported such a finding. Specifically, the couple argues that there are no more direct victims of Defendants' anticompetitive conduct and that their suit raises little risk of complex apportionment of damages or duplicative recovery. *See Associated Gen.*, 459 U.S. at 543-45.

We have made it abundantly clear, however, that a cognizable antitrust injury is a necessary precursor to antitrust standing, regardless of whether other *Associated General* factors support such a finding. *See Barton & Pittinos*, 118 F.3d at 184 n.9 ("Because [plaintiff] fails the antitrust injury requirement, it would lack standing even if the other [*Associated General*] factors favored it."). Indeed, we have directed district courts to consider the threshold issue of antitrust injury at the outset, because "[i]f antitrust injury is not found, further inquiry is unnecessary." *City of Pittsburgh*, 147 F.3d at 265.

As noted above, the McCulloughs failed to plead a redressable antitrust injury because they were neither competitors nor consumers in the pertinent market. Nor was any harm to their business inextricably intertwined with Defendants' alleged conduct.

9

Because they have failed to allege antitrust injury *ab initio*, the remaining *Associated General* factors are irrelevant.[5]

For these reasons, we will affirm the District Court's finding that the McCulloughs lacked standing to sue under the Clayton Act for Defendants' alleged violations of the Sherman and Robinson-Patman Acts.[6]

---

[5] Furthermore, as the District Court found, the *Associated General* factors cited by the McCulloughs offer them no real support. The manufacturers who competed directly with Defendants and lost market share as a result of their alleged anticompetitive conduct— such as Sulzer—undoubtedly suffered harm that was more direct than the couple's lost commissions. Moreover, allowing both Defendants' competitors and those competitors' salespeople to bring separate antitrust claims would present a substantial risk of duplicative recovery and require an unduly complex apportionment of damages.

[6] Even if they had established antitrust standing, the McCulloughs' antitrust claims would fail on the merits. Although the "essence" of a claim under § 1 of the Sherman Act "is the existence of an agreement[,]" *Gordon v. Lewiston Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005) (citations omitted), the McCulloughs have alleged no facts suggesting that Defendants agreed to act in concert. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565 n.10. (2007) (explaining that a complaint which "mentioned no specific time, place, or person involved in the alleged conspiracies" was deficient because it did not allege who "supposedly agreed, or when and where the illicit agreement took place"). Nor have the McCulloughs defined the relevant market with any reference to the rule of reasonable interchangeability or cross-elasticity of demand, as a § 1 claim requires. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997). Finally, though the couple argue on appeal that they pled a commercial bribery claim under Section 2(c) of the Robinson-Patman Act, their amended complaint actually alleged illegal price discrimination under Section 2(a), a claim they have now abandoned. We thus agree with the District Court that the amended complaint would fall well short of stating a plausible claim for relief on the merits even if the McCulloughs had standing to bring a private antitrust action under the Clayton Act.

10

B.

The McCulloughs next claim the District Court erred in dismissing their RICO claims. We agree with the District Court, however, that the McCulloughs' amended complaint failed to allege certain essential elements of a RICO cause of action.[7]

The McCulloughs acknowledge that they must plead the existence of an "enterprise" to state a claim under § 1962(c) of RICO. An "enterprise is an entity, . . . a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Instead of claiming that Defendants qualify as an enterprise, the McCulloughs argue that the surgeons, hospital administrators, and other entities that allegedly received bribes and kickbacks from Defendants are the relevant enterprise for RICO purposes. Because Defendants "participate[d] . . . in the conduct of [this] enterprise's affairs through a pattern of

---

[7] The McCulloughs' lack of standing to bring an antitrust action likewise prevents them from pursuing their RICO claims. The Supreme Court has extended much of the *Associated General* analysis for antitrust standing to RICO cases. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 267-70 (1992); *Steamfitters*, 171 F.3d at 932. A plaintiff lacks standing to sue under RICO where, as here, he suffers injury that is only indirectly related to a defendant's alleged misconduct. *See Holmes*, 503 U.S. at 268-69; *Steamfitters*, 171 F.3d at 932-33. Accordingly, even if the McCulloughs had properly alleged the essential elements of a RICO claim, they would lack standing to sue under RICO for the same reasons they lack standing to sue under the Clayton Act. *See Steamfitters*, 171 F.3d at 932 ("[M]uch, (if not all) of what we have said . . . in our discussion of antitrust standing applies to the [plaintiff's] RICO claims."). Although the District Court did not consider whether the McCulloughs had standing to bring a RICO claim, we may affirm for any reason supported by the record. *Donahue v. Gavin*, 280 F.3d 371, 372 n.2 (3d Cir. 2002).

11

racketeering activity"—*i.e.*, regularly paying bribes—the McCulloughs seek to hold them liable under § 1962(c).

To prove the existence of a RICO enterprise, a plaintiff must show: "(1) that the enterprise is an ongoing organization with some sort of framework for making or carrying out decisions; (2) that the various associates function as a continuing unit; and (3) that the enterprise be separate and apart from the pattern of activity in which it engages." *United States v. Irizarry*, 341 F.3d 273 (3d Cir, 2003) (quoting *United States v. Riccobene*, 709 F.2d 214, 222 (3d Cir. 1983)). Simply listing a string of individuals or entities that engaged in illegal conduct, without more, is insufficient to allege the existence of a RICO enterprise. *See Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 646 (7th Cir. 1995).[8]

Here, the McCulloughs' RICO allegations suggest at most that numerous surgeons throughout their sales territory regularly and individually received illegal payments from

---

[8] The McCulloughs cite *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, where we held that the plaintiff need not affirmatively plead the three essential attributes of a RICO enterprise as long as it alleged that an enterprise existed. 742 F.2d 786, 790 (3d Cir. 1984). We doubt that the conclusory allegation of enterprise that we accepted in *Seville* would pass muster under the pleading requirements articulated by the Supreme Court in *Twombly*, 550 U.S. at 555-63, and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). Under today's pleading standards, the "formulaic recitation of the elements of a" RICO claim that we allowed in *Seville* likely would be insufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. Moreover, the alleged RICO enterprise in *Seville* involved two existing corporate entities, *see* 742 F.2d at 788, which indicated that the putative organization was ongoing and had both a decisionmaking hierarchy and an existence separate and apart from any illegal activity. Here, by contrast, the McCulloughs implausibly allege that competing doctors in three different states qualify as an enterprise.

12

Defendants. However, nothing in their amended complaint or RICO case statement plausibly suggests that these doctors combined as a unit with any semblance of an organizational framework or common purpose. Nor have they alleged facts that would support an inference that this alleged enterprise had any structure or existence separate and apart from Defendants' alleged criminal conduct. To the contrary, the McCulloughs' allegations indicate that the doctors and hospitals who supposedly comprised the RICO enterprise in fact *competed* against one another in the market for surgical orthopedic services. Accordingly, we agree with the District Court that the McCulloughs' amended complaint failed to state a claim under § 1962(c) of RICO.[9]

## III.

Anticipating the possibility that we might agree with the District Court, the McCulloughs ask us to remand their case to allow additional amendments. We decline this invitation because the McCulloughs' failure to remedy the significant legal and factual deficiencies that plague their allegations—especially after receiving detailed guidance from the District Court—convinces us that any further amendments would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that "repeated failure to cure deficiencies by amendments previously allowed" supports a denial of leave to amend). Accordingly, we will affirm the District Court's judgment in all respects.

---

[9] The McCulloughs also contend that they properly alleged a RICO conspiracy in violation of § 1962(d). Because their conspiracy claim under § 1962(d) is predicated solely on Defendants' alleged violation of § 1962(c), it likewise fails.