**Julius V. MOORE, Jr., Plaintiff,**

v.

**FIDELITY FINANCIAL SERVICES, INC., Defendant.**

**No. 94 C 2558.**

United States District Court, N.D. Illinois, Eastern Division.

May 8, 1995.

Daniel A. Edelman, Cathleen M. Combs, Tara Leigh Goodwin, James Eric Vander Arend, and Michelle Ann Weinberg, Edelman & Combs, Chicago, IL, for plaintiff.

Jonathan N. Ledsky and Craig Allen Varga, Peterson & Ross, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

In this putative class action, plaintiff alleges a number of claims arising from defendant's financing of retail motor vehicle purchases. In connection with such financing, defendant's Standard Security Agreement (the "Agreement") requires the borrower to obtain insurance for defendant's benefit against "loss by fire, theft, and collision." If the borrower fails to do so, the Agreement allows defendant to obtain and "advance the premium on required additional insurance," adding the premium to the borrower's indebtedness. Plaintiff refers to such insurance as "force placed insurance."

Practices relating to force placed insurance have spawned a great deal of litigation in recent years.[1] In the instant case, plaintiff alleges that a number of defendant's practices violate various statutes and legal doctrines: (1) charging borrowers the entire premium without crediting the borrower with premiums that the insurer refunds to defendant; (2) procuring and passing on charges to borrowers for insurance coverage that include more than that required by the Agreement; (3) subrogating certain of defendant's rights to the insurer; (4) procuring insurance that covers the entire balance owed under the contracts, including both the principal and finance charges, even though the amount payable under the policy cannot exceed the outstanding principal alone; (5) purchasing single interest "force placed" insurance only to benefit the creditor;[2] (6) issuing "force placed" insurance policies that are retroactive; (7) procuring "force placed" insurance that does not apply a deductible to losses and thus is substantially more expensive than a standard policy with a deductible; and (8) misrepresenting borrowers' redemption rights.

In an earlier decision involving the original complaint in this case, this court denied defendant's motion to dismiss and for a more definite statement. (*Moore v. Fidelity Financial Services, Inc.*, 869 F.Supp. 557 (N.D.Ill.).) Thereafter, plaintiff filed an amended complaint that added a count (Count I) under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1341 and 1961, *et seq.* ("RICO"). In addition, plaintiff alleges violations of the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* (Count II), the Illinois Consumer Fraud Act, 815 ILCS 505/2 (Count IV), the Uniform Commercial Code (Count V), as well as a claim for breach of contract (Count III).

---

1. See, e.g., *Heintz v. Jenkins*, — U.S. —, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); *Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640 (7th Cir. 1995); as well as the cases discussed below in this opinion.

2. Plaintiff alleges that the "force placed" insurance defendant procures protects only defendant's (not the borrowers') interests and thus is prohibited under the Illinois Motor Vehicle Retail Installment Sales Act, 815 ILCS 375/8, which provides in part:

A seller under a retail installment contract may require insurance against substantial risk of loss of or damage to the motor vehicle, protecting the seller or holder as well as the buyer, and may, if the buyer elects, include therefor in the contract an amount not exceeding the premiums chargeable for such insurance in accordance with rate filings made with the Director of Insurance.... A seller under a retail installment contract may not require other insurance but if the buyer voluntarily contracts therefor, the seller may then include in the contract an amount for that other insurance not exceeding the premiums paid or payable by the seller or holder.... If the buyer fails to furnish such evidence, the holder may purchase such insurance, charge the premium therefor to buyer, and prorate the cost of the insurance over the remaining scheduled time payments.

Defendant has filed a motion to dismiss Count I (the RICO count) pursuant to Fed. R.Civ.P. 12(b)(6). For the reasons set forth below, the court denies the motion as stated, but directs the parties to address additional issues.

## FACTS [3]

Defendant finances the purchase of vehicles from automobile dealers. The dealers must use defendant's prescribed printed installment sales contracts in order for defendant to consider purchasing the loans. Plaintiff bought an automobile from Mid City Nissan, which referred him to defendant to obtain financing. As part of the financing process, plaintiff signed defendant's standard Agreement.[4]

Plaintiff did not obtain the required insurance under the Agreement, and on January 5, 1993, defendant issued "force placed" insurance through American Bankers Insurance Company ("American Bankers") on plaintiff's vehicle. The actual insurance policy term ran from October 19, 1992, through October 19, 1993, and listed defendant as the only insured party. Defendant's "force placed" insurance policy insured defendant against losses to plaintiff's automobile caused by many risks, including fire, lightening, transportation, hail, earthquake, windstorm, explosion and others.

## DISCUSSION

A complaint should not be dismissed pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Insurance Co., et al. v. California et al.,* — U.S. —, —, 113 S.Ct. 2891, 2917, 125 L.Ed.2d 612 (1993); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In reviewing a motion to dismiss, the court tests the sufficiency of the complaint, not the merits of the suit. *Triad Associates, Inc. v. Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). The court must presume that all well-pleaded facts are true, and resolve all ambiguities and draw all reasonable inferences in favor of the plaintiff. *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992).

Defendant moves to dismiss Count I of the amended complaint on the ground that the McCarran–Ferguson Act (the "Act"), 15 U.S.C. § 1012(b),[5] bars the applicability of RICO to defendant's alleged collateral protection insurance practices. Congress enacted the Act to "assure that the activities of insurance companies in dealing with their policyholders would remain subject to state regulation." *SEC v. National Securities, Inc.,* 393 U.S. 453, 459, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969).

To determine whether plaintiff's RICO claim is precluded under the Act the court must apply a four-part test: (1) does the federal law in question specifically relate to the business of insurance; (2) does the challenged conduct constitute the business of insurance; (3) has the state enacted laws for the purpose of regulating the challenged conduct; and (4) will the application of the federal statute invalidate, impair, or supersede the state legislation regulating the challenged conduct. *Cochran v. Paco, Inc.,* 606 F.2d 460, 464 (5th Cir.1979). There is no dispute about the first and third questions. For the reasons discussed below, the court

---

**3.** The facts in this case are recited in the court's previous opinion. *Moore v. Fidelity Financial Services, Inc.,* 869 F.Supp. at 559. Only those facts from the amended complaint that are relevant to this opinion are recited below.

**4.** The agreement reads in part:

I will keep the security insured against loss by fire, theft and collision in case of motor vehicles, and against loss by fire for other security. If I do not I am in default or at your option, you may advance the premium on required or authorized insurance, the advance will become a part of the Note, and will be secured by this Security Agreement, and will bear interest at the Agreed Rate of Charge provided for in the Note.

**5.** Section 1012(b) of Act provides, in part, that:

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance.

concludes that the conduct at issue does not constitute the "business of insurance," and even if it did, RICO does not impair, invalidate or supersede state legislation regulating the conduct.

## A. The "Business of Insurance" Issue

In *SEC v. National Securities, Inc.*, 393 U.S. 453, 460, 89 S.Ct. 564, 568–569, 21 L.Ed.2d 668 (1969), the Supreme Court addressed the meaning of the term "business of insurance":

> The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the 'business of insurance.' ... Whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the 'business of insurance.'

The Supreme Court has defined three relevant characteristics that determine whether alleged conduct is within the business of insurance: "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Union Labor Life Insurance Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982) (summarizing the Court's analysis in *Group Life & Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979)).

In *Bermudez v. First of America Bank Champion*, 860 F.Supp. 580 (N.D.Ill.1994),[6] Judge Castillo recently analyzed a "force placed" insurance claim against these standards and determined that the defendant's conduct did not constitute the "business of insurance" under the Act. In *Bermudez*, as in the instant case, the plaintiff alleged that the defendant demanded payment for "force

placed" insurance that was not authorized under its sales contract. *Id.*, at 588. In addressing the defendant's argument that the RICO claim was preempted by the Act because the alleged conduct involved the "business of insurance," the court applied the above stated factors and found all three lacking, holding: (1) the defendant's practice of charging the plaintiff for allegedly unauthorized insurance coverage did not involve the transfer or spreading of the insured's (the defendant's) risk because the transfer and spreading of that risk were completed when the defendant (the insured) entered into the insurance contract with the insurer; the defendant's "practice of passing on the cost of the premiums to the plaintiffs is logically and temporally unconnected with the transfer and spreading of the risk of default accomplished by the ... policy."; (2) based on the allegations that the sales contracts did not authorize the defendant to purchase certain additional risks coupled with the fact that the plaintiffs were not "insureds" under the insurance policies, the alleged practices of charging the plaintiffs for this additional coverage was not an integral part of the policy relationship between the insurer and the insured; and (3) the alleged actions were a type of scheme to pass on the cost of a capital investment that was not limited to entities within the insurance industry. *Id.*, at 590–591 ("the insurance industry is an innocent party whose involvement is merely by happenstance").

Although the amended complaint in the instant case is overly verbose and unnecessarily repetitive in parts, when distilled to its essence plaintiff's RICO count is based primarily upon allegations that defendant procured and charged to the borrower unauthorized insurance, naming only defendant as the insured. Plaintiff also alleges that defendant has an agreement with American Bankers, whereby American Bankers returns 20% to 50% of earned premiums to defendant, yet defendant charges borrowers 100% of the

---

**6.** Pursuant to an unpublished order, this opinion was later withdrawn pursuant to Fed.R.Civ.P. 60 and the parties' stipulation and agreement of compromise and settlement. *Bermudez v. First*

*of America Bank–Champion, N.A.*, 1995 WL 153047 (N.D.Ill.1995). Accordingly, this court cites this opinion to concur with Judge Castillo's reasoning, not as precedent.

premium and does not pass on the refund to the borrowers.

As in *Bermudez*, all three *Royal Drug* factors are missing. First, the practice of purchasing unauthorized insurance and charging it to plaintiff does not involve the transfer or spreading of the defendant's risk because that transfer was completed once defendant purchased the insurance from the insurer. Second, charging plaintiff for the extra coverage is not an integral part of the policy relationship between the insured and the insurance company because plaintiff is not the insured. The "policy" relationship is between defendant (the policyholder) and the insurer. In contrast, the challenged conduct is an integral part of the contract between plaintiff and the insured, not the insurer. Third, the practices complained of are not limited to "force placed" insurance, or indeed to any kind of insurance. Plaintiff's claim could just as easily have been based upon allegations of unauthorized procurement of other services or products that increased the amount financed by defendant (e.g., undercoating, license and title fees, etc.); or upon "kickbacks" that were improperly withheld from the customer. As plaintiff pointed out in its brief, the relationship between defendant and the insurer, American Bankers, might be perfectly legitimate.

Defendant argues that this court should not follow its colleague's reasoning in *Bermudez*, but rather should follow two other district courts' decisions, *Gordon v. Ford Motor Credit Company*, 868 F.Supp. 1191 (N.D.Cal. 1992), and *Senich v. Transamerica Premier Insurance Co.*, 766 F.Supp. 339 (W.D.Pa. 1990), both of which barred RICO claims involving "force placed" insurance on the basis of the Act. After carefully reviewing all three cases, this court concludes that the facts of *Gordon* and *Senich* are distinguishable from the facts of the instant case. For example, in *Gordon* the plaintiff alleged that the defendant itself, not the insurer, set the insurance rates. This led the court to conclude that the fixing of rates is "certainly" a part of the business of insurance. *Gordon*, 868 F.Supp. at 1195. In *Senich*, the defendant was the insurance company, not the finance company. The court there held that

state insurance law comprehensively regulated the insurance companies' practices complained of, and therefore the plaintiff's attempt to pursue a RICO claim would "invalidate, impair or supersede" the state insurance law as forbidden by the Act. The facts of *Bermudez* are far more similar to the instant case than those of *Gordon* and *Senich*, and this court chooses to follow the well reasoned rationale of Judge Castillo in *Bermudez*. To the extent that rationale differs with *Gordon* and *Senich*, this court respectfully disagrees with those decisions.

■ The "business of insurance" involves the relationship between the insurance company and the policyholder. *National Securities*, 393 U.S. at 460, 89 S.Ct. at 568–69. That relationship is not at issue here. The conclusion is inescapable that the conduct complained of in Count I does not constitute the "business of insurance," but instead constitutes alleged unlawful practices of the finance company in passing along unauthorized charges to or otherwise overcharging its borrowers. For this reason alone, defendant's motion to dismiss Count I on the basis of the McCarran–Ferguson Act should be denied.

## B. Whether RICO Invalidates, Impairs or Supersedes State Insurance Law

■ Even if the court were to find that the conduct complained of constituted the "business of insurance," it would not be barred by the Act unless it were found to "invalidate, impair or supersede" any law enacted by Illinois for the purpose of regulating the business of insurance. 15 U.S.C. § 1012. Defendant has failed to demonstrate that this prong of the test can be satisfied. Indeed, to do so one would have to argue that Illinois insurance law somehow condoned or allowed merchants to charge premiums for unauthorized or otherwise improper insurance coverage.

The most that can be said about the relationship between RICO and Illinois insurance law is that under certain circumstances a party that violates Illinois insurance law by charging unlawful premiums *might* also violate RICO and have to pay treble damages under the federal statute. Such overlap be-

tween state and federal law does not violate the McCarran–Ferguson Act. In *NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir.1982), the Seventh Circuit upheld this principle in rejecting a McCarran–Ferguson challenge to the application of the Federal Housing Act which, like the state insurance law there in question, prohibited "redlining." The court noted that "[d]uplication is not conflict" that would be barred by McCarran–Ferguson, and that, "state and federal rules that are substantively identical but differ in penalty do not conflict with or displace each other." 978 F.2d at 295, 297.

Defendant argues that the court may have to interpret the Illinois Insurance Code regarding defendant's right to receive reasonable commissions (215 ILCS 5/141 [7]), and its right to receive "abatements" or "bonus" payments (215 ILCS 5/151 [8]). Even if defendant were correct, it has nevertheless failed to demonstrate how application of RICO would "conflict" with these statutes. No party in the instant case has suggested that Illinois law permits a finance company to charge its borrowers premiums for unauthorized insurance or improperly keep rebates for itself, and the court can find no such authority. Therefore, RICO, *if* it covers the practices complained of, could not be found to "invalidate, impair, or supersede the state legislation regulating the challenged conduct."

Accordingly, defendant's motion to dismiss is denied because the application of RICO to the Amended Complaint is not barred by the McCarran–Ferguson Act.

## ADDITIONAL ISSUES TO BE ADDRESSED BY THE PARTIES

Having determined that defendant's motion, as filed, should be denied because the McCarran–Ferguson Act does not bar Count I of the amended complaint, the court directs the parties to file briefs on the additional issue of whether Count I sufficiently alleges a cause of action under RICO (an important issue not addressed by the parties in connection with defendant's motion). The parties are specifically instructed to address the issues raised in *Richmond v. Nationwide Cassel, LP,* 52 F.2d 640 (7th Cir.1995). Defendant is ordered to file a memorandum on the sufficiency of Count I of the amended complaint on or before May 19, 1995; plaintiff shall file a response on or before June 2, 1995; and defendant is given leave to file a reply on or before June 16, 1995. The previously set status date of May 8, 1995, is vacated, and the case is set for a status report on July 20, 1995, at 9:15 a.m.

---

**7.** 215 ILCS 5/141 provides in part:

> Agency contracts. (1) Any domestic company which contracts with any person ... whereby such person is granted the right or privilege to solicit, procure, write or produce a major part of the insurance business for such company and collect premiums therefor shall file such contract with the Director ...
>
> (2) The Director shall not approve any such contract which (a) subjects the company to excessive charges for expenses or commissions; ...

**8.** 215 ILCS 5/151 provides in part:

> Payment or acceptance of rebates prohibited. (1) No company doing business in this State and no insurance agent or broker shall offer, promise, allow, give, set off or pay, directly or indirectly, any rebate of or part of the premium payable on the policy, or on any policy or agent's commission thereon or earnings, profits, dividends or other benefits founded, arising, accru-

ing or to accrue thereon or therefrom, ... or any other valuable consideration or inducement to or for insurance on any risk in this State, now or hereafter to be written, or for or upon any renewal of any such insurance, which is not specified in the policy contract of insurance, or offer, promise, give, option, sell, purchase any stocks, bonds, securities or property or any dividends or profits accruing or to accrue thereon, or other thing of value whatsoever as inducement to insurance or in connection therewith, or any renewal thereof which is not specified in the policy....

> (2) No insured person or party or applicant for insurance shall directly or indirectly receive or accept, or agree to receive or accept any rebate of premium or of any part thereof or all or any part of any agent's or broker's commission thereon, or any favor or advantage, or share in any benefit to accrue under any policy of insurance, or any valuable consideration or inducement, other than such as is specified in the policy.