938

CHARLES C. ALLENSON, Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. HOYNE SAVINGS BANK, f/k/a Hoyne Savings and Loan Association, Defendant-Appellee.

First District (2nd Division)   No. 1—93—3815

Opinion filed May 23, 1995.

Clinton A. Krislov and Jonathan Nachsin, both of Krislov & Associates, Ltd., of Chicago, and Dennis S. Nudo, of Nudo, Poteracki & Associates, of Rosemont, for appellant.

William B. Weidenaar, Timothy S. Breems, and Paula M. Carstensen, all of Ruff, Weidenaar & Reidy, Ltd., of Chicago, for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff, Charles C. Allenson, filed this four-count class action against defendant, Hoyne Savings Bank (Hoyne), for misamortization of mortgage loan payments. The circuit court dismissed plaintiff's claim under the Racketeer Influenced and Corrupt Organization Act (RICO) (18 U.S.C. §§ 1961, 1962 (1988)) for failure to allege facts sufficient to support such an action. For the following reasons, we reverse the judgment of the circuit court.

The plaintiff class of home mortgage borrowers brought this ac-

tion against Hoyne, an Illinois savings and loan association engaged in making residential and commercial loans, for the alleged improper charging of interest "in advance" on loan payments, rather than "in arrears," as loan documents directed. Plaintiff alleged that his monthly mortgage payments were improperly allocated between interest charges and principal reduction. Plaintiff filed his first complaint in 1990 alleging breach of contract, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 262 (now 815 ILCS 505/2 (West 1992))), and violation of the Illinois Interest Act (Ill. Rev. Stat. 1989, ch. 17, par. 6410 (now 815 ILCS 205/4a (West 1992))). On July 11, 1991, in response to Hoyne's motion to dismiss for failure to state a cause of action, the circuit court dismissed the Illinois Interest Act count but maintained the breach of contract and Consumer Fraud Act counts.

Plaintiff filed a third amended complaint on September 17, 1992, adding a claim under RICO. RICO, in pertinent part, states:

"§ 1961. Definitions
As used in this chapter—

* * *

(3) 'person' includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." (18 U.S.C. §§ 1961(3), (4) (1991).)

"§ 1962. Prohibited Activities

* * *

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." (18 U.S.C. § 1962(c) (1991).)

"§ 1964. Civil Remedies

* * *

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in an appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." (18 U.S.C. § 1964(c) (1991).)

The complaint alleged in part:

"49. Defendant and its subsidiaries, Hoyne Development Corporation, Hoyne Safe Deposit Company, Inc. and Hoyne Service Corporation engage in a full-service real estate finance 'enterprise' (the 'Enterprise') within the meaning of 18 U.S.C. § 1961(4). The Hoyne Development Corporation subsidiary lends money to finance a joint venture (62nd Street Joint Venture) engaged in buying and rehabbing Joint rental housing. The Hoyne Safe Deposit Company, Inc. subsidiary rents safe deposit boxes located on Defendant's premises to members of the public, usually Defendant's customers, some of them probably members of the class. The Hoyne Service Corporation subsidiary sells insurance, mainly homeowners insurance, predominantly to Defendant's mortgage borrowers, many of whom are also members of the class. Each subsidiary has the same officers and directors. The President and Vice President/Secretary of each subsidiary also hold the same positions with the Defendant. Each subsidiary has a checking and/or savings account with the Defendant. Each subsidiary's employees are on Defendant's payroll.

\* \* \*

54. Plaintiff and the class, by being overcharged for interest on their mortgages[,] have been injured in their business and property as a result of Defendant's violation of 18 U.S.C. § 1962(c), and are entitled to relief under 18 U.S.C. § 1964(c), for threefold the damages they have sustained plus the costs of this suit, including a reasonable attorneys fee."

The complaint also alleged that defendant used the mails, in furtherance of the interest scheme, to collect mortgage payments and to issue account statements and passbooks which overstated the interest due upon each monthly payment and the principal amount remaining on the loans.

Hoyne moved to dismiss plaintiff's third amended complaint in its entirety. On April 2, 1993, the circuit court denied Hoyne's motion as to the contract and Consumer Fraud Act claims, but dismissed the RICO claim for failure to sufficiently allege that a common or shared purpose existed between Hoyne and its subsidiaries and that the alleged racketeering activities were a function of the relationship between Hoyne and its subsidiaries. On October 14, 1993, the court applied Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) language to its dismissal of the RICO count.

## A

■ Plaintiff contends that the circuit court erred in dismissing his RICO claim. A complaint should not be dismissed unless the pleadings, viewed in a light most favorable to plaintiff, disclose that no set

of facts could be proved that would entitle plaintiff to relief. (*Chicago Investment Corp. v. Dolins* (1981), 93 Ill. App. 3d 971, 975, 418 N.E.2d 59.) To maintain a RICO action under section 1962(c), plaintiff must adequately allege that Hoyne was employed by or associated with an enterprise engaged in, or whose activities affected, interstate or foreign commerce, and that Hoyne conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity. (*Haroco, Inc. v. American National Bank & Trust Co.* (7th Cir. 1984), 747 F.2d 384, 387, *aff'd* (1985), 473 U.S. 606, 87 L. Ed. 2d 437, 105 S. Ct. 3291.) To accomplish this, plaintiff must allege the existence of (1) an enterprise (*United States v. Turkette* (1981), 452 U.S. 576, 587, 69 L. Ed. 2d 246, 257, 101 S. Ct. 2524, 2530-31); (2) a distinction between the enterprise and the "person" conducting the prohibited activities (*Haroco,* 747 F.2d at 401); and (3) a nexus between the enterprise and the prohibited activities. *Overnite Transportation Co. v. Truck Drivers, Oil Drivers, Filling Station Workers Union Local No. 705* (7th Cir. 1990), 904 F.2d 391, 393.

■ An enterprise is an entity that is composed of a group of persons associated together for a common purpose. (*Turkette,* 452 U.S. at 583, 69 L. Ed. 2d at 254, 101 S. Ct. at 2528-29.) The central element of an enterprise is structure. Congress intended enterprises to be associations having an ascertainable structure which exist for the purpose of maintaining operations directed toward an economic goal. (*United States v. Neapolitan* (7th Cir. 1986), 791 F.2d 489, 500, *cert. denied* (1986), 479 U.S. 940, 93 L. Ed. 2d 372, 107 S. Ct. 422.) Within an informal enterprise, structure can be provided by continuity and differentiation of roles. *Burdett v. Miller* (7th Cir. 1992), 957 F.2d 1375, 1379.

■ The existence of an enterprise is established by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." (*Turkette,* 452 U.S. at 583, 69 L. Ed. 2d at 254, 101 S. Ct. at 2528.) Allegations about the formation, purpose, and history of the entity are relevant. (*H.G. Gallimore, Inc. v. Abdula* (N.D. Ill. 1987), 652 F. Supp. 437, 445.) Conclusional allegations, which lack details about the structure of the entity, are insufficient to sustain a RICO action. (*Segreti v. Lome* (N.D. Ill. 1990), 747 F. Supp. 484, 486.) Similarly, an association in fact is not established by stringing a group of related entities together with a label. *Richmond v. Nationwide Cassel* (N.D. Ill. 1994), 847 F. Supp. 88, 92.

■ Plaintiff contends that Hoyne and its three subsidiaries comprise a full-service real estate financing enterprise in fact. (*Chamberlain Manufacturing Corp. v. Maremont Corp.* (N.D. Ill.

December 19, 1993), No. 90 C 7127 (1993 WL 535420, *8) (an association between a parent corporation and its subsidiary constituted an enterprise).) Hoyne and each of its three subsidiaries provide a distinct, yet related, financial service. For example, Hoyne's home mortgage customers may rent safe deposit boxes on Hoyne's premises from Hoyne Safe Deposit Company as well as purchase homeowner's insurance from Hoyne Service Corporation. Accordingly, we find that plaintiff adequately alleged the existence of an enterprise in fact. Hoyne and its subsidiaries comprise a full-service real estate financing organization with a distinct structure and purpose.

■ Plaintiff must also allege that the person who committed the RICO violations is separate and distinct from the associated enterprise. (*Haroco*, 747 F.2d at 401-02.) In the seventh circuit, while a corporation cannot be liable for conducting its own affairs through a pattern of racketeering, it can be liable for conducting the affairs of a related corporation. (*Chamberlain*, No. 90 C 7127, slip op. at ___ (1993 WL 535420, *9).) Parents and subsidiaries may be found to be distinct when the RICO person is either the subsidiary (*Haroco*, 747 F.2d at 402-03), or the parent. *Ghouth v. Conticommodity Services, Inc.* (N.D. Ill. 1986), 642 F. Supp. 1325, 1331 ("a parent corporation, as 'person', can conduct the affairs of a subsidiary, as 'enterprise' ").

Plaintiff contends that Hoyne, as person, is separate and distinct from the association of Hoyne and its subsidiaries, as enterprise. Hoyne comprises only part of the full-service financial enterprise. As a result, the enterprise maintains a separate and distinct existence from Hoyne.

■ The enterprise must also be the vehicle through which the person performs the racketeering activity. (*R.E. Davis Chemical Corp. v. Nalco Chemical Co.* (N.D. Ill. 1990), 757 F. Supp. 1499, 1507.) A meaningful nexus must be shown between the affairs of the enterprise and the pattern of racketeering. The three-pronged nexus test requires that: "(1) the defendant must have committed the racketeering acts; (2) the defendant's position in or relationship with the enterprise facilitated the commission of the acts; and, (3) the acts had some effect on the enterprise." (*Overnite*, 904 F.2d at 393; *United States v. Blackwood* (7th Cir. 1985), 768 F.2d 131, 137-38, *cert. denied* (1985), 474 U.S. 1020, 88 L. Ed. 2d 554, 106 S. Ct. 569.) It is undisputed that plaintiff has satisfied the first prong. The second prong requires Hoyne's position with the enterprise to have made the commission of the predicate acts possible or easier. (*Overnite*, 904 F.2d at 394.) The complaint alleges that members of the plaintiff class purchased homeowner's insurance from Hoyne Service Corporation and some also probably rented safe deposit boxes from Hoyne Safe Deposit

Company. We can infer from these allegations that the existence of the full-service real estate financing enterprise may have enticed some members of the plaintiff class into obtaining a mortgage from Hoyne. By bringing in additional customers, the enterprise made it easier for Hoyne to accomplish its alleged racketeering goals. The third prong of the nexus test is satisfied because the alleged excessive · interest proceeds enriched Hoyne and, transitively, the enterprise as a whole.

Thus, we find that plaintiff pled a valid cause of action under RICO.

## B

■ Hoyne contends that plaintiff's complaint was also deficient for failing to plead facts that established mail fraud. To raise a mail fraud claim, plaintiff must allege that Hoyne used the mails to further its RICO scheme. (*Spiegel v. Continental Illinois National Bank* (7th Cir. 1986), 790 F.2d 638, 646, *cert. denied* (1986), 479 U.S. 987, 93 L. Ed. 2d 582, 107 S. Ct. 579; *Schmuck v. United States* (1989), 489 U.S. 705, 711, 103 L. Ed. 2d 734, 743, 109 S. Ct. 1443, 1448 (incidental use of the mails which comprises only part of a scheme is sufficient to violate the mail fraud statute).) Although use of the mails is not considered an act of fraud in furtherance of a scheme if the communication places the alleged defrauded party on notice and makes it more likely that the scheme will be detected (*United States v. Bonansinga* (7th Cir. 1985), 773 F.2d 166, 172, *cert. denied* (1986), 476 U.S. 1160, 90 L. Ed. 2d 723, 106 S. Ct. 2281), courts have found that inaccurate requests for payment involving complex financial calculations do not place the defrauded party on notice. (*Aitken v. Fleet Mortgage Corp.* (N.D. Ill. February 12, 1992), No. 90 C 3708 (1992 WL 33926, *4); *Robinson v. Empire of America Realty Credit Corp.* (N.D. Ill. February 20, 1991), No. 90 C 5063 (1991 WL 26593, *2).) In the instant case, Hoyne used the mails to distribute account statements and to receive interest payments based on faulty calculations within the statements. While the payments received were equivalent to the proper amount due, the interest and principal balances were improperly adjusted. We find that the statements did not place the plaintiff class on notice of the fraud because the misallocations were not apparent on the face of the note. Borrowers would become aware of the misamortization only if they performed financial calculations.

■ Hoyne also argues that plaintiff failed to plead a causal connection between his claimed injury and its use of the mails. Under RICO, proximate cause is required, and the injury asserted must be directly related to the injurious conduct alleged. (*Holmes v. Securities*

*Investor Protection Corp.* (1992), 503 U.S. 258, 268, 117 L. Ed. 2d 532, 544, 112 S. Ct. 1311, 1318.) Plaintiffs have alleged a misamortization scheme, of which the mails were a part. The misamortization scheme was directly related to plaintiff's alleged injuries, and proximate cause was adequately pled.

We find that plaintiff's allegations were sufficient to support the RICO count. We therefore reverse the judgment of the circuit court and remand for further proceedings.

Reversed and remanded.

SCARIANO, P.J., and HARTMAN, J., concur.