Julius V. **MOORE**, Jr., Plaintiff,

v.

**FIDELITY FINANCIAL SERVICES, INC., Defendant.**

No. 94 C 2558.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 26, 1995.

---

Daniel A. Edelman, Cathleen M. Combs, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, Edelman & Combs, Chicago, IL, for plaintiff.

Jonathan N. Ledsky, Craig Allen Varga, Rachel A. Hart, Peterson & Ross, Chicago, IL, for defendant.

## ORDER

GETTLEMAN, District Judge.

In its opinion and order dated May 5, 1995, the court denied defendant Fidelity Financial Services, Inc.'s ("Fidelity") previous motion to dismiss Count I but ordered the parties to address the sufficiency of Count I following the Seventh Circuit's recent opinion in *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640 (7th Cir.1995). *Moore v. Fidelity*, 884 F.Supp. 288 (N.D.Ill.1995). Defendant filed a motion to dismiss Count I on May 19, 1995, that has been fully briefed by the parties. After reviewing the briefs and the cases cited by the parties the court finds that plaintiff Julius V. Moore, Jr. fails to distinguish this case from *Richmond,* and in light of that opinion plaintiff's RICO claim must be dismissed.

DISCUSSION [1]

■ In his amended complaint plaintiff alleges three enterprises under his RICO claim: (1) Bank of Boston Corporation ("BBC"); (2) Fidelity Acceptance Corporation ("FAC"); and, (3) "[t]he combination of Fidelity and the automobile dealers with which it had relationships."

Plaintiff does not name any specific automobile dealer; plaintiff does not even name the dealer that sold plaintiff his car. The only factual allegation made regarding the third alleged enterprise is that Fidelity prescribes the printed form on which the retail installment contracts executed by the dealers must be written in order for Fidelity to consider purchasing the contracts. The facts plaintiff alleges regarding an enterprise consisting of Fidelity and automobile dealers is virtually identical to the facts alleged in *Richmond.* In *Richmond,* the plaintiff alleged that the defendant "plus unnamed car dealers" were an enterprise and that the car dealers prepared customer retail installment sales contracts on the defendant's printed forms. Similar to the instant case, the plaintiff "did not even mention" the dealership from which the plaintiff purchased her used car. The court held that "[s]uch a nebulous, open-ended description of the enterprise does not sufficiently identify this essential element [an enterprise] of the RICO offense." *Id.*

The amended complaint alleges the following facts regarding BBC: (1) Fidelity is part of a corporate group that is ultimately owned by BBC (BBC owns FAC and FAC owns Fidelity); (2) BBC is engaged in the financial services business, including consumer finance, insurance, consumer banking, venture capital, investment banking, merchant banking, trust services, brokerage services, investment management services, equipment leasing and mortgage banking; (3) "FAC and BBC delegated to Fidelity the responsibility for the servicing of the consumer loan contracts at issue in this case"; and, (4) "the money that Fidelity acquired through the

---

1. The facts in this case are recited in the court's previous opinions. *Moore v. Fidelity Financial* *Services, Inc.,* 869 F.Supp. 557 (N.D.Ill.1995); *Moore,* 884 F.Supp. at 290.

conduct complained of inured to the benefit of FAC and BBC."[2]

Regarding FAC, in addition to the facts stated above, plaintiff alleges that: (1) FAC is engaged in the financial services business, including consumer finance and insurance, and "management of FAC delegates the conduct and management of various lines of business, either generally or with respect to specified geographical areas, to specific subsidiaries"; and, (2) FAC and Fidelity share common directors and officers.

■ In *Richmond*, 52 F.3d at 644, the court articulated the current standards for identifying an "enterprise" in a RICO complaint:

An enterprise must be more than a group of people who get together to commit a "pattern of racketeering activity," and more than a group of associated businesses that "are operated in concert" under the control of one family. The hallmark of an enterprise is a "structure." There must be a structure and goals separate from the predicate acts themselves.

In addition to these constraints, plaintiff must allege a continuity of the enterprise and a common purpose of engaging in a prohibited course of conduct. *Id.* Similar to the allegations in *Richmond*, the instant complaint fails to allege that BBC or FAC, alleged to be constituent parts of the enterprises, played a direct role in the "force placed insurance" that allegedly was foisted on plaintiff. Accordingly, like the court in *Richmond*, the court finds that plaintiff fails to allege adequately an enterprise under RICO. *Id.*, 52 F.3d at 646.

Plaintiff cites cases that he asserts support finding that BBC or FAC are RICO "enterprises." Plaintiff cites one recent Illinois case, *Allenson v. Hoyne Savings Bank*, 272 Ill.App.3d 938, 651 N.E.2d 573, 577 (1st Dist. 1995), that post-dates *Richmond*. In *Allenson*, however, in addition to alleging that the parent and subsidiaries shared officers and directors, the plaintiff alleged: (1) that all of the officers and directors of the parent and all of the subsidiaries are the same; (2) each subsidiary has a checking and/or savings account with the parent company; (3) each subsidiary's employees are on the parent's payroll; and, (4) that customers coming into the parent's locale can purchase the subsidiaries' services or products. Based on these facts, the court held that the parent and its subsidiaries comprised an organization with a distinct structure and purpose. *Id.*

The court finds that the facts in *Allenson* are distinguishable and do not support plaintiff's enterprise claims in the instant case. The remaining cases plaintiff cites pre-date *Richmond*, do not apply the standards set forth above, and therefore are inapplicable to the instant case.

■ Plaintiff asserts that his allegation that "Fidelity, as subsidiary of FAC and BBC, was delegated the task of originating and servicing the loans at issue in this case" distinguishes this case from *Richmond*.[3] Plaintiff's allegation that FAC and BBC are involved with Fidelity because they "delegated" the loan servicing operation to Fidelity is nebulous and vague. Further, this allegation, in conjunction with the allegations stated above, fails to allege that either FAC or BBC played a role in the forced placed insurance purchased by defendant.

The court finds that plaintiff has failed to show that this case is distinguishable from the facts in *Richmond*. Accordingly, under *Richmond*, this court grants defendant's mo-

---

**2.** Plaintiff asserts that there are other relevant facts regarding the alleged relationship between Fidelity and BBC and cites to documents that he attaches to his response to the motion to dismiss. The court will look only to the well-pleaded allegations in the complaint for purposes of a motion to dismiss under Rule 12(b)(6). *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir.1989). Accordingly, the court will ignore all factual allegations that plaintiff raises in his response brief that are not included in the amended complaint.

**3.** Again, plaintiff alleges additional facts in his response memorandum that were not alleged in the amended complaint. "It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Thomason*, 888 F.2d at 1205. As noted above the court is limited to considering the well-pleaded facts that are alleged in the complaint when reviewing a motion to dismiss under Rule 12(b)(6). *Id.* Further, "the pleading itself must state the essential elements of the RICO action or it is worthy of dismissal." *Richmond*, 52 F.3d at 646. Accordingly, the court will not discuss the additional facts plaintiff raised in his response to defendant's motion to dismiss.

tion to dismiss Count I of the amended complaint.