WALLACE ACQUISITIONS, INC., Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. ALLIED WASTE INDUSTRIES, INC., *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—97—4184

Opinion filed April 23, 1999.

1010

Krislov & Associates, Ltd. (Clinton A. Krislov and Lisa M. Gotkin, of counsel), and Fumagalli, Tecson & Brent (Joseph P. Brent, of counsel), both of Chicago, for appellant.

Hynes & Baird, of Chicago (James T. Hynes, of counsel), and John E. Noel, of Lombard, for appellees.

JUSTICE QUINN delivered the opinion of the court:

Plaintiff, Wallace Acquisitions, Inc., individually and as a representative of a class of persons similarly situated, brought this class action against defendants, Allied Waste Industries, Inc. (Allied), and National Waste Services, Inc. (National), seeking damages for the imposition of a 3% surcharge labeled as a "Federal Clean Air Act Fuel Surcharge" on defendants' customers' bills when the surcharge was not required by federal law. In July 1995 Wallace filed a four-count complaint against Allied and National Waste alleging common law fraud (count I), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1996)) (count II), breach of contract (count III), and violations of the Racketeer Influenced and Corrupt Organization Act (RICO) (18 U.S.C. §§ 1961, 1962 (1994)) (count IV). Defendants' motion for summary judgment as to counts I, II and III were denied. Plaintiff appeals from the circuit court's grant of summary judgment in favor of defendants on count IV, contending that its allegations support liability under RICO. For the reasons that follow, we reverse the judgment of the circuit court granting summary judgment in favor of defendants.

The following facts are undisputed. In 1992, Allied, a solid waste management company serving various regions nationwide, acquired National. The evidence showed that when Allied acquires new subsidiaries, it moves quickly to integrate the acquired company into its operating and control systems. Allied then immediately appoints a new board of directors and executive officers and establishes new bank accounts and cash control procedures for the acquired company.

In January 1993 plaintiff, a Delaware corporation doing business as Binyon's Restaurant, entered into a service agreement with National, now a wholly owned subsidiary of Allied that operates as a waste collection company for Allied's operations in the Chicago area. The service agreement set forth the type of service plaintiff required and the price National would charge to provide those services.

Dan Ivan, Allied's executive vice president and secretary, was

responsible for all aspects of the operation of National, including ensuring the smooth integration of National with Allied and improving the efficiency and profitability of National as a subsidiary. Ivan worked closely with National's division managers, conducted weekly management meetings and oversaw all major decisions regarding National.

Shortly after National's acquisition, Roy Svehla, National's fleet maintenance manager, received notice from National's fuel supplier that, pursuant to the Federal Clean Air Act (42 U.S.C. § 7479 *et seq.* (1994)), effective October 1, 1993, all on-road diesel vehicles were required to use only low sulfur diesel fuel and that in January 1994 there would be a 4.3 cent-per-gallon increase in fuel taxes. This requirement meant an increase in the per-gallon price that National would pay for fuel. Svehla raised the issue at a weekly manager's meeting. In his affidavit, Svehla averred that it was decided that a "surcharge would be added to customer bills." This surcharge, entitled the "Federal Clean Air Act Fuel Surcharge" (Surcharge), represented a 3% increase in the price customers were charged. It was decided to highlight the Surcharge as a separate line item in the customer's monthly statement.

In an affidavit and deposition, Ivan stated that a letter was drafted and sent to customers explaining the reason for the Surcharge. However, in deposition testimony, Akaber Jaffer, Michael Gallagher and Shaher Samed, all customers of National, indicated that they did not recall receiving a letter explaining the Surcharge. Ivan testified that it was his belief that the Surcharge was only imposed on a portion of Allied's existing customer base, namely, National's customers. In a letter to the district general managers of Allied's subsidiaries dated September 10, 1993, Ivan stated, "[m]ost importantly, a price increase to all of our customers to offset these mandated costs has to be initiated ASAP." Ivan further testified that the use of the term "Federal Clean Air Act Fuel Surcharge" was unique to National and that no other subsidiary used that term. Plaintiff alleges that the Surcharge was implemented by other Allied subsidiaries as well.

Many customers called to inquire and complain about the Surcharge. According to the deposition testimony of Michael Gallagher and Akaber Jaffer, when they called National regarding the Surcharge, they were told that the Surcharge was required by federal law. Michael Gallagher specifically testified to the following:

> "I asked them specifically about the Federal Clean Air Act Fuel Surcharge and was given an explanation that indeed it was either a cost that was directly going to the federal government or was required by the federal government as a pass through. I came away with that clearly."

Defendants testified that, due to customer inquiries and complaints, they issued a second letter to customers explaining the Surcharge with the December 1993 billing statement. In an attempt to explain the Surcharge, the letter provided the following in pertinent part:

> "The Federal Clean Air Act was passed by Congress in 1990. The Environmental Protection Agency began enforcing this Act on October 1st of this year. The Clean Air Act requires all diesel powered trucks travelling on our highways to use fuel with a substantially lower sulfur content than in the past. We at National Waste Services are in total support of the E.P.A. in their efforts to rid our environment of harmful pollutants. The effect of this new low sulfur fuel requirement on our company is that fuel costs have increased by approximately $.25 per gallon. Therefore, the surcharge which was passed along to our customers is only a small portion of the actual increase."

Plaintiff alleges that customers did not receive this second letter.

Defendants testified that in April 1994 the Surcharge was reduced to 2% and the line item on the bills was changed to "Fuel Surcharge." In January 1995 the Surcharge was dropped.

In July 1995 Wallace filed a four-count complaint against Allied and National Waste alleging common law fraud (count I), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (count II), breach of contract (count III), and violations of RICO (count IV).

RICO in pertinent part, states:

"§ 1961. Definitions

\* \* \*

> (3) 'person' includes any individual or entity capable of holding a legal or beneficial interest in property;
> (4) 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. §§ 1961(3), (4) (1994).
> "(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in conduct of such enterprise's affairs, through a pattern of racketeering activity." 18 U.S.C. § 1962(c) (1994).

Plaintiff's RICO claim, which is the subject of this appeal, specifically alleges that defendants imposed a 3% surcharge labeled the "Federal Clean Air Act Fuel Surcharge" on its customers when no such surcharge is required under the Federal Clean Air Act. The complaint further alleges that because defendants used the mails to send

customers billing statements which included the deceptively described Surcharge, and also used the mails to collect this Surcharge from customers, defendants violated the federal mail fraud (18 U.S.C. § 1342 (1994)) and RICO statutes. Through this activity, National and Allied, considered separately, conducted the affairs of "the enterprise" outlined as follows:

> "Defendants Allied, National Waste and their affiliates, taken together as a vertically integrated solid waste management business group providing nonhazardous waste collection, transfer, recycling and disposal services to over 212,000 customers in the United States, constitute a full-service waste collection and disposal 'enterprise' (the Enterprise) within the meaning of 18 U.S.C. 1961(4)."

Defendants filed an answer and affirmative defenses arguing that plaintiff's complaint failed to state a cause of action upon which relief could be granted and that plaintiff was barred by the doctrine of unclean hands. Plaintiff then filed a motion for class certification. Defendants filed a motion for summary judgment on all counts of the complaint.

In their summary judgment motion, defendants argued that with respect to plaintiff's RICO claim, no enterprise existed because defendants were merely conducting their own corporate affairs. Further, defendants argued that National and Allied were not separate and distinct from the enterprise as required under section 1962(c) because they were corporate affiliates engaged in the same type of business. Defendants also argued that there was no fraud in their activities and therefore they engaged in no racketeering activity under RICO.

In response to defendants' motion for summary judgment, plaintiff asserted that National was a separate person conducting its end of the group's enterprise business by sending fraudulent billing statements through the mail. Furthermore, plaintiff argued that parents and subsidiaries may be distinct for purposes of establishing that the "person" who allegedly committed RICO violations was separate and distinct from the associated enterprise when the RICO "person" is either a subsidiary or a parent, citing *Allenson v. Hoyne Savings Bank*, 272 Ill. App. 3d 938, 651 N.E.2d 573 (1995).

Defendants asserted that *Allenson* was distinguishable, citing *Moore v. Fidelity Financial Services, Inc.*, 897 F. Supp. 378 (N.D. Ill. 1995). Defendants further argued that plaintiff failed to allege sufficient facts to show that there is a distinction between the "persons" alleged to have committed the racketeering activities and the alleged enterprise.

Subsequently, the trial court denied defendants' motion for summary judgment with respect to the counts in the complaint based on common law fraud, consumer fraud and breach of contract. The trial court found that questions of fact existed as to whether the Surcharge was a misrepresentation, whether defendants' customers were misled about the nature and amount of the Surcharge, and whether the written explanations of the Surcharge misstated the amount customers were to absorb. The trial court granted summary judgment for defendants with respect to the RICO count. In doing so, the trial court specifically found the following:

"It is impossible to state a section 1962(c) claim where a single corporation is both the person and the enterprise. *Fitzgerald v. Chrysler Corp.*, 1996 U.S. Dist. Lexis, 11951, at 18. Further, it is impossible to [*sic*] to state a claim where the parent corporation is the person and the subsidiary is the enterprise unless the activities of the parent and the subsidiary are clearly distinct. *Id.* Section 1962(c) requires more than the existence of separate legal entities where the person and the enterprises are affiliated corporations. *Id.* at 20 (footnote number 7). In this case, Allied, National and the various other subsidiaries of Allied are conducting their own corporate affairs and cannot be a RICO enterprise and person at the same time. The activities of Allied and National are not distinctive. Therefore, summary judgment is entered on behalf of Defendants on Count IV."

Plaintiff's motion for class certification was granted in part and denied in part. The trial court ordered that the class consist of "all persons, corporations, partnerships and other entities who were charged a 'Federal Clean Air Act Fuel Surcharge' by National." Plaintiff's timely appeal followed.

■ Initially, we note that a reviewing court conducts a *de novo* review of the evidence in summary judgment cases. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113, 649 N.E.2d 1323 (1995). The reviewing court must construe all evidence strictly against the movant and liberally in favor of the nonmoving party. *Espinoza*, 165 Ill. 2d at 113. Where the pleadings, depositions and affidavits show that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law. *First of America Trust Co. v. First Illini Bancorp, Inc.*, 289 Ill. App. 3d 276, 283, 685 N.E.2d 351 (1997). If reasonable persons could draw different inferences from undisputed facts, summary judgment should be denied. *Smith v. Armor Plus Co.*, 248 Ill. App. 3d 831, 839, 617 N.E.2d 1346 (1993).

■ To state a claim under section 1962(c) of the RICO statute, a RICO plaintiff must show "(1) conduct (2) of an enterprise (3) through

a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 87 L. Ed. 2d 346, 358-59, 105 S. Ct. 3275, 3285 (1985). To accomplish this, plaintiff must allege the existence of (1) an enterprise; (2) a distinction between the enterprise and the "person" conducting the prohibited activities; and (3) a nexus between the enterprise and the prohibited activities. *Overnite Transportation Co. v. Truck Drivers, Oil Drivers, Filling Station Workers Union Local No. 705*, 904 F.2d 391, 393 (7th Cir. 1990).

Plaintiff first contends that Allied and its subsidiaries, including National, comprise a full-service waste collection and disposal enterprise within the meaning of 18 U.S.C. § 1961(4). Defendants respond that Allied and its subsidiaries do not constitute an enterprise because Allied and National, as parent and subsidiary respectively, are merely conducting their own corporate affairs.

■ A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (1994). The central element of an enterprise is "an ongoing structure or persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995); *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990).

■ We hold as a matter of law that plaintiff adequately established the existence of an enterprise. Allied and its subsidiaries fall squarely within the statute's plain language as corporations. Furthermore, Allied and National, along with Allied's other subsidiaries, comprise a full-service waste collection and disposal organization with a distinct structure, purpose and responsibilities.

Plaintiff next contends that National as a "person" and Allied as a "person" are each separate and distinct from the Allied enterprise. Defendants respond that because all of the activities and actors are part of the same corporate structure and perform the same business, there is no enterprise separate and distinct from their normal business operations.

■ Under the standard set forth in *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384 (7th Cir. 1984), the seventh circuit adopted the distinctiveness requirement. Under this requirement, a plaintiff must allege that the person who committed the RICO violation is separate and distinct from the associated enterprise. *Haroco*, 747 F.2d at 401-02. Furthermore, the requirement is satisfied when the RICO person is a subsidiary and the RICO enterprise is its corporate parent. *Haroco*, 747 F.2d at 402-03. It requires the RICO

person and the corporate entities in the enterprise to have "each played a distinct role within the purported scheme." *Ewing v. Midland Finance Co.*, 1997 WL 627644 at 4 (N.D. Ill. 1997). The RICO person must have committed the crime or fraud while conducting the enterprise's affairs, not merely its own business. See *Richmond*, 52 F.3d at 645-47.

Plaintiff relies on *Allenson v. Hoyne Savings Bank*, 272 Ill. App. 3d 938, 651 N.E.2d 573 (1995), to supports its contention that National, as the RICO "person," is separate and distinct from the Allied "enterprise." In *Allenson*, the plaintiff filed a class action complaint against the defendant for misamortization of mortgage loan payments. The plaintiff alleged that monthly mortgage payments were improperly allocated between interest charges and principal reduction. The plaintiff's complaint alleged that the defendant used the mails in furtherance of the scheme, to collect mortgage payments, and to issue account statements and passbooks which overstated the interest due upon each monthly payment and the principal amount remaining on the loans. The trial court granted the defendant's motion to dismiss the plaintiff's RICO claim, finding that the complaint failed to "sufficiently allege that a common or shared purpose existed between Hoyne and its subsidiaries and that the alleged racketeering activities were a function of the relationship between Hoyne and its subsidiaries." *Allenson*, 272 Ill. App. 3d at 941. One of Hoyne's subsidiaries rented safe deposit boxes on Hoyne's premises and another of its subsidiaries provided homeowner's insurance. This court found that Hoyne and its subsidiaries comprised a full-service real estate financing organization with a distinct structure and purpose. *Allenson*, 272 Ill. App. 3d at 943. This court held that "the existence of a full-service real estate financing enterprise may have enticed some members of the plaintiff class into obtaining a mortgage from Hoyne. By bringing in additional customers, the enterprise made it easier for Hoyne to accomplish its alleged racketeering goals." *Allenson*, 272 Ill. App. 3d at 944.

Similarly, in *Majchrowski v. Norwest Mortgage, Inc.*, 6 F. Supp. 2d 946 (N.D. Ill. 1998), the seventh circuit squarely addressed the issue of whether the distinctness requirement is satisfied when the RICO person is a subsidiary and the RICO enterprise is its corporate parent. The representative plaintiffs in *Majchrowski* claimed that Norwest Mortgage, their mortgage service company and a subsidiary of Norwest Nova, Inc., which in turn is a wholly owned subsidiary of Norwest Corporation, violated RICO and various state laws when it filed a proof of claim that charged $66 in property inspection fees and a $100 proof of claim fee in the plaintiff's chapter 13 bankruptcy proceedings.

The plaintiffs alleged that these "bogus" fees, allegedly not part of the mortgage agreement, were part of a scheme to defraud and encumber the property of mortgage borrowers who found themselves in bankruptcy. The plaintiffs specifically alleged that Norwest Mortgage and officers of Norwest Mortgage engaged in a pattern of racketeering activity by knowingly imposing and collecting these unauthorized fees through the mail and through proof of claims filed in bankruptcy court. Through this activity, Norwest Mortgage conducted the affairs of two "enterprises": (1) Norwest Corporation, its indirect parent corporation, and (2) the entire group headed by Norwest Corporation. *Majchrowski*, 6 F. Supp. 2d at 953. The plaintiffs also alleged that profits derived from the scheme were "upstreamed" to Norwest Corporation and were reported on Norwest Corporation's financial statements. *Majchrowski*, 6 F. Supp. 2d at 953.

Norwest Mortgage contended that the plaintiffs failed to show a distinction between Norwest Mortgage and the enterprise because they did "nothing more than describe the way in which virtually all corporate groups necessarily function." *Majchrowski*, 6 F. Supp. 2d at 956. The seventh circuit held that defendant's argument failed because the case fell squarely within the *Haroco* analysis. *Majchrowski*, 6 F. Supp. 2d at 956. The seventh circuit further held that Norwest Corporation enterprises did have some part in masking or facilitating the unauthorized fee scheme and that Norwest Mortgage had its own distinct role. *Majchrowski*, 6 F. Supp. 2d at 956. Norwest specifically devised and implemented the scheme to defraud. Norwest Corporation, as parent, enabled Norwest Mortgage to implement the alleged scheme to charge bankrupt borrowers illegal fees. *Majchrowski*, 6 F. Supp. 2d at 956.

In the case *sub judice*, National is distinct from the RICO enterprise comprised of Allied and its subsidiaries under the standard set forth in *Allenson* and *Majchrowski*. Here, as in *Majchrowski*, the activities of the Allied enterprise, Allied and National are separate and distinct. National's waste collection business is confined to a specific geographic area, separate from Allied's other waste collection businesses. National, on its own, created the Surcharge and unilaterally decided to charge its customers the 3% Federal Clean Air Fuel Act Surcharge. Thus, National as a person acted separately to concoct the Surcharge and its deceptive name. Plaintiff alleges that Allied, as parent corporation, acted separately in issuing a memo directing all regional managers to implement similar increases. Allied, on the other hand, contends that the Surcharge was only imposed on National's customer base. We find that there is a genuine issue of material fact as to whether the Surcharge was implemented only by National or by other subsidiaries as well.

Plaintiff also argues that Allied assumed the "person" role through its conduct and acted through its enterprise to facilitate the fraud. Plaintiff asserts that Allied, as parent, monitored National's activities, adopted the wrongdoing of National and communicated the allegedly deceptive Surcharge to its other subsidiaries. It is a rare case in which the parent is the "person" and also part of the enterprise. In order to satisfy this scenario, a plaintiff must allege that the parent conducted or participated in the affairs of the enterprise as distinct from its own affairs through a pattern of racketeering activity. *Chamberlain Manufacturing Corp. v. Maremount*, 919 F. Supp. 1150, 1157 (N.D. Ill. 1996); see also *Fitzgerald v. Chrysler Corp.*, No. 96—0021, slip op. at 5 (N.D. Ill. August 16, 1996). In the instant case, the evidence establishes that there is a question of material fact as to whether the parent corporation Allied, as the RICO "person," controlled and directed the enterprise's business to be conducted through a pattern of racketeering activity including billing customers for the deceptively labeled Surcharge.

For the aforementioned reasons, the entry of summary judgment in favor of defendants with respect to plaintiff's RICO claims is reversed and this cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

CAMPBELL, P.J., and ZWICK, J., concur.